FT. SMITH & W. RY. Co. *et al. v.* STATE.

. No. 771.    Opinion Filed March 8, 1910.

(108 Pac. 407.)

**CORPORATION COMMISSION—Orders—Review by Court.** Where an order of the Corporation Commission is assailed on an appeal solely upon the ground that there was not sufficient evidence before the commission to entitle the order to the **prima facie** presumption of being reasonable, just, and correct, obtaining by reason of section 22, art. 9, of the Constitution, if there is any evidence reasonably tending to support the findings of fact and the order of the commission its order will not be disturbed.

(Syllabus by the Court.)

*Appeal from the Corporation Commission.*

Action by the State against the Fort Smith & Western Railway ·Company and others.    From an order of the Corporation Commission fixing a schedule of rates, defendants appeal.    Affirmed.

*Clifford L. Jackson, S. T. Beldsoe, C. O. Blake,* and *Edgar .A. de Meules,* for appellants.—Citing: Lawson on Presumptive Evidence, pp. 76, 77; *Interstate Com. Com. v. Ry. Co.,* 120 Fed. ·934; *Interstate Com. Com. v. Ry. Co.,* 209 U. S. 108.

*Chas. West,* Atty. Gen., and *Geo. A. Henshaw,* Asst. Atty. Gen., .for appellee.

HAYES, J.    This case is an appeal from an order of the Corporation Commission promulgating a schedule of rates to be observed by all railroads operating in this state in making charges on shipments of goatskins, hides, sheep pelts, green or dry, between all stations in the state.    The order was made by the commission .after publication of notice thereof and after hearing had thereon.

The commission has made and filed in the case its findings of fact and a full and clear statement of the reasons upon which it bases the order.    The evidence establishes that hides are usually purchased in small quantities throughout a state, and shipped locally to some concentrating point, where they are assorted

and classified, and each particular class or kind shipped in carload lots to that point in the market that consumes that particular quality or kind of hides. The commission finds, and the evidence tends to establish, that the local rates heretofore prevailing on hides in this state have been so high as to prevent the concentration of hides at any point in the state where they may be assorted and classified, and then shipped to that market which consumes that particular quality of hides; and the jobbers throughout the state are compelled, by reason of the high local rates, to ship the hides direct to Kansas City, where they are assorted and classified and shipped to St. Louis, Chicago, and other places where a market exists. That on account of said high rates it is practically impossible to establish a concentrating point within the state, as a result of which there is a discrimination against the dealers in hides in this state. The schedule of rates proposed by the order is a reduction upon the rates heretofore existing. The commission finds the rates heretofore existing unreasonable and unjust and the proposed rates to be reasonable. The only argument made by counsel for appellants in their brief against the incorrectness of the order of the commission is:

"There is nothing in the evidence in this case that justifies the theory of the presumption that this order is reasonable, just, and correct. There is an entire want of evidence upon which to base the order. The presumption that the Constitution raises in support of this order is based upon the evidence, and upon nothing else, and if the evidence will not support it then clearly the Constitution does not intend that the presumption shall exist."

In *M., K. & T. Ry. Co. v. State,* 24 Okla. 331, 103 Pac. 613, it is held:

"On appeal from an order of the Corporation Commission, the presumption obtains, by reason of section 22, art. 9, of the Constitution, that the order is reasonable, just, and correct, and he who complains on appeal of such order has upon him the burden of establishing the unreasonableness, unjustness, or incorrectness of such order, which he may do by showing that the unreasonableness of the order appears affirmatively from the facts as certified by the commission, or that it is shown by evidence in the record, upon

which the commission failed to make findings of fact, or upon which the commission erroneously found the facts."

If there was no evidence in the record tending to support the facts found by the commission, the *prima facie* presumption of the reasonableness, justness, and correctness of the order, of the commission, which obtains by reason of section 22, art. 9, of the Constitution, would not attach; but there is not wanting in the record evidence which supports the findings of the commission. It is shown by the evidence that the rates heretofore prevailing in the state upon commodities covered by the order have been so high as to practically prohibit the concentration of hides at any point in the state for assortment and classification, and then to be shipped to those markets where the respective classes of hides are consumed; and it is cheaper under prevailing local rates to ship them to markets outside of the state, to wit: Kansas City, where they are classified, and then shipped to other markets, where they are ultimately consumed. It is also shown that said former rates are much higher than those prevailing upon the same commodities in some four or five other states where the transportation of such commodities is made under similar circumstances. And the evidence further established that the average rate under the schedule promulgated by the order is higher and more favorable to appellants than the average rate now prevailing upon the same commodities in Texas, Missouri, and Arkansas under similar conditions.

No effort is made by appellants to establish by testimony, and no contention has been made in this court, that the proposed rate is not equal to the cost of service or will not be renumerative; nor is it made to appear that such rates are so unreasonably low as to require that other commodities must be charged a higher rate, and made to contribute an unproportionable amount to the total revenues of the companies, in order to pay the cost of all services rendered to the public by the companies, and yield them a reasonable income upon their investment.

The power lodged in the commission to promulgate rates is a legislative power, and its exercise by the commission involves

legislative discretion and policy. Any rule that would require the commission, before it promulgates any order fixing a rate, to have before it evidence that would establish to a mathematical certainty the reasonableness of the proposed rate, would greatly hinder, if not almost entirely prevent, the commission from exercising that power. A rate that is so high as to be practically prohibitive, in the absence of any explanation of a necessity for such rate, must be presumed to be an unreasonable rate. The evidence discloses that the rates per ton mile prevailing in Arkansas is 20.6 mills, in Missouri, 28.1 mills, in Texas, 21 mills, in Virginia, 22.9 mills. It is true that it appears from the record that the rates in these states were not voluntarily made by the railway companies, and were promulgated by orders of the railway commissions of those states; but since a railway commission cannot enforce an unreasonable and unjust rate, and the companies have operated under those rates, and the same have not been set aside by the courts as being unjust, and it not appearing that any effort has been made by railway companies to have the same set aside, they are not without probative value in this proceeding. The average rate per ton mile under the order of the commission which it is sought by this proceeding to reverse is 28.3 mills, being higher than in any of the states named. It appears that the interstate rate from Little Rock, Ark., to Chicago produces a revenue of 8.5 mills per ton mile; from Ardmore, Okla., to Chicago 9.7 mills per ton mile; from Austin, Tex., 9.8 mills per ton mile; from El Paso, Tex., 8.6 mills per ton mile—or an average of about 9 mills per ton mile on interstate shipments from these various points. These interstate rates upon which this average is made are for shipments over long distance it is true, and long hauls of freight can no doubt be made at a lower rate per ton mile than short hauls; but the average rate per ton mile under the proposed order is practically three times as great as the average rate per ton mile on interstate shipments from the points named. While this evidence could not be conclusive as to the reasonableness of the proposed order, in the absence of evidence on the part of railway companies that the proposed rate does not

afford a reasonable compensation for the service, such rates are not without probative value, and may be looked to for comparison in determining whether there is any evidence before the commission upon which the order is based; and, taken with the other evidence, is sufficient to entitle the order of the commission to the presumption of being reasonable and just, which obtains by reason of section 22, art. 9, of the Constitution. In this connection it may be stated that there is an admission in the record by the Missouri, Kansas & Texas Railway Company of the unfairness and unjustness of the rates heretofore prevailing, and the expression of willingness to readjust the rates upon some fair, reasonable, and equitable basis.

The evidence in the record fairly supports the conclusion of the commission that a new schedule of rates upon the commodity involved should be made, and there is sufficient evidence to entitle the order of the commission to the *prima facie* presumption of being just, reasonable, and correct, and to shift the burden upon the complainants in this case to overcome that presumption, which they have not undertaken to do.

The order of the commission is affirmed.

Dunn, C. J., and Kane and Turner, JJ., concur; Williams, J., not sitting.