## ATCHISON, T. & S. F. RY. CO. v. MILLER *et al.*

No. 2067. Opinion Filed February 9, 1911.

RAILROADS—Corporation Commission—Orders Requiring Sunday Trains—Reasonableness. The duty of a railroad company, under its charter or license to furnish passenger service, is not completely discharged by operating one passenger train each way every day of the week except Sunday, and an order of the Corporation Commission of this state compelling passenger train service to be afforded at least by one train each way every day of the week, though such train be operated at a pecuniary loss on Sundays, will not be held, on review here, to be unreasonable.

(a) Especially is this so when there is no showing made that the entire railroad line would be operated at a loss.

(Syllabus by the Court.)

*Appeal from the Corporation Commission.*

Action before the Corporation Commission by E. B. Miller and others to compel the Atchison, Topeka & Santa Fe Railway Company to operate a Sunday train. Order for plaintiffs, and defendant brings error. Affirmed:

*Cottingham & Bledsoe,* for appellants.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* for appellees.

WILLIAMS, J., The order of the commission from which this appeal is prosecuted was entered upon the application of E. B Miller and others, residents of Wakita, asking that the appellant be required to operate a Sunday passenger train upon its line of railroad in this state between the stations of Manchester and Blackwell. The appellant insists that the order is unreasonable and should be reversed. As to the *prima facie* presumption in favor of orders of the commission, that question has been time and again passed upon by this court. *A., T. & S. F. Ry. Co. v. State et al.,* 23 Okla. 210, 100 Pac. 11, 21 L. R. A. (N. S.) 908; *A., T. & S. F. Ry. Co. v. State et al.,* 23 Okla. 510, 101 Pac. 262; *M., K. & T. Ry. Co. v. State et al.,* 24 Okla. 331, 103 Pac. 613; *Kansas City, M. & O. Ry. Co. v. State et al.,* 25 Okla. 715, 107 Pac. 912; *Ft. Smith & W. Ry. Co. et al. v. State,* 25 Okla. 866, 108 Pac. 407.

The brief on the part of counsel for the appellees is principally made up of extracts from cases of other states and of the Supreme Court of the United States as to what effect courts will give findings made by commissions. In all these cases the courts were sitting in a judicial capacity when reviewing such orders, and not in a legislative or administrative capacity, as this court does in reviewing this order. Consequently none of said cases have any application to the case at bar. It is sufficient to say, however, that this question has been time and again passed on by this court and should be deemed as settled.

This order, though it does not appear to have so occurred to counsel for appellees, as it is not suggested in the brief, can be sustained without determining whether the service commanded may be rendered without pecuniary loss. In *Missouri Pacific Railway*

*Company v. Kansas ex rel. Taylor*, 216 U. S. 262, 30 Sup. Ct. Rep. 330, it is said:

"But we do not think that the case here presented requires us to consider the issues of fact relied upon, even if it be conceded, for the sake of argument only, that, on a writ of error to a state court, where a particular exertion of state power is assailed as confiscatory, because ordering a service to be rendered for an inadequate return, the proof upon which the claim of confiscation depends would be open for our original consideration, as the essential and only means for properly performing our duty of independently ascertaining whether there had been, as alleged, a violation of the Constitution. We say this because, when the controversy here presented is properly analyzed, the first and pivotal question arising is whether the order complained of did anything more than command the railroad company to perform a service which it was incumbent upon it to perform as the necessary result of the possession and enjoyment of its charter powers, and which it could not refuse to perform as long as the charter powers remained and the obligation which arose from their enjoyment continued to exist. The difference between the exertion of the legislative power to establish rates in such manner as to confiscate the property of the corporation by fixing them below a proper remunerative standard and an order compelling a corporation to render a service which it was essentially its duty to perform, was pointed out in *Atlantic Coast Line R. R. Co. v. North Carolina Corp. Commission, supra* (206 U. S. 1, 51 L. Ed. 933, 27 Sup. Ct. Rep. 585, 11 A. & E. Ann. Cas. 398). In that case the order to operate a train for the purpose of making a local connection necessary for the public convenience was upheld, despite the fact that it was conceded that the return from the operation of such train would not be remunerative. Speaking of the distinction between the two it was said (p. 26):

" 'This is so (the distinction) because, as the primal duty of a carrier is to furnish adequate facilities to the public, that duty may well be compelled, although by doing so, as an incident, some pecuniary loss from rendering such service may result. It follows, therefore, that the mere incuring of a loss from the performance of such duty does not, in and of itself, necessarily give rise to the conclusion of unreasonableness, as would be the case where the whole scheme of rates was unreasonable under the doctrine of

*Smyth v. Ames,* 169 U. S. 526, 42 L. Ed. 842, 18 Sup. Ct. Rep. 418.

" 'Of course the fact that the furnishing of a necessary facility ordered may occasion an incidental pecuniary loss is an important criterion to be taken into view in determining the reasonableness of the order. As the duty to furnish necessary facilities is coterminous with the powers of the corporation, the obligation to discharge that duty must be considered in connection with the nature and productiveness of the corporate business as a whole, the character of the services required, and the public need for its performance.'

"Indeed the principal which was thus applied in the Atlantic Coast Line Case had previously, as pointed out in that case, been made the basis of the ruling in *Wisconsin, M. & P. R. Co. v. Jacobson,* 179 U. S. 287, 45 L. Ed. 194, 21 Sup. Ct. Rep. 115. The fact that the performance of the duty commanded by the order which is here in question may, as we have conceded for the purpose of the argument, entail a pecuniary loss, is, of course, as declared in the Atlantic Coast Line Case, as a general rule, a circumstance to be considered in determining its reasonableness, as are the other criteria indicated in the opinion in that case. But where a duty which a corporation is obliged to render is a necessary consequence of the acceptance and continued enjoyment of its corporate rights, those rights not having been surrendered by the corporation, other considerations are, in the nature of things, paramount, since it cannot be said that an order compelling the performance of such a duty at a pecuniary loss is unreasonable. To conclude to the contrary would be but to declare that a corporate charter was purely unilateral; that is, was binding in favor of the corporation as to all rights conferred upon it, and was devoid of obligation as to duties imposed, even although such duties were the absolute correlative of the rights conferred. Was the duty which the order here commanded one which the corporation was under the absolute obligation to perform as the result of the acceptance of the charter to operate the road, is then the question to be considered.

"It may not be doubted that the road, by virtue of the charter under which the branch was built, was obliged to carry passengers and freight, and therefore, as long as it enjoyed its charter rights, was under the inherent obligation to afford a service for the carrying of passengers. In substance, this was all the order commanded, since it was confined to directing that the road put

on a train for passenger service. True it is that the road was carrying passengers in a mixed train, that is, by attaching a passenger coach to one of its freight trains. Testing the alleged unreasonableness of the order in the light of the inherent duty resting upon the corporation, it follows that the contention must rest upon the assumption that the discharge of the corporate duty to carry passengers was so completely performed by carrying them on a mixed train as to cause an order directing the running of a passenger train to be so arbitrary and unreasonable as to deprive of rights protected by the Constitution of the United States. But when the necessary result of the contention is thus defined, its want of merit is, we think, self-evident, unless it can be said as a matter of law that there is such an identity as to public convenience, comfort, and safety between travel on a passenger train service and travel on a mixed train,—that is, a train composed of freight cars with a passenger car attached,—as to cause any assertion of legislative authority for the public welfare, based on a 'distinction between the two, to be repugnant to the Constitution of the United States. The demonstration as to the want of foundation for such a contention might well be left to the consensus of opinion of mankind to the contrary."

This court, in *Chicago, R. I. & P. Ry. Co. et al. v. State et al.,* 24 Okla. 370, 103 Pac. 617, in effect, announced the rule declared in *Missouri Pacific Ry. Co. v. Kansas ex rel. Taylor, supra.* If the appellant may be permitted not to operate passenger trains over said line of railroad on Sunday, on the ground that to operate such train would occasion a pecuniary loss, for the same reason it could decline to operate such train on other days in the week, and it might result that on certain lines of railway in the state passenger trains would be operated one every other day or every third day.

In *Twin Valley Telephone Company v. Mitchell et al.,* 27 Okla. 388, it was said:

"The charter and franchise obligations require the public service corporation, if it be a telephone exchange, to be operated every day during reasonable hours. If it be a railroad, that it operate at least one passenger train each way each day. But when regulation goes further than this and requires additional service at a pecuniary loss to the company, with few exceptions, the

power of the 14th amendment to the federal Constitution intervenes' and arrests such requirements."

It is suggested in the brief of counsel for appellant that it is the general policy of the state, as expressed in article 4, chapter 25 of the Compiled Laws of 1909, sections 2049 to 2073, inclusive, that Sunday labor be performed only when required by necessity or charity. That is true, and if that rule would justify the appellant in not operating at least one passenger train on said line of railroad on Sundays, it would also prevent appellant from operating passenger trains on its other lines in the state on Sundays. This, we apprehend, they would not accede to be the policy of the law.

The fact that the railway is operated during the week days and is depended on during such periods by the patronizing public for transportation for means of necessity and charity, as well as the other affairs of life, on Sundays the public would also depend on it for transportation for means of necessity or charity. It would be unreasonable to say that, under the charter provisions granted by sovereignty, the railroad company could perform this transportation for matters of necessity and charity, as well as matters of business, on week days, but as to Sundays the patronizing public must make other arrangements. If this order commanded the installing of a second Sunday train, the question might be different.

Further, there is no evidence in the record tending to show that this entire line of railway is unremunerative, even though the Sunday train be operated at a loss.

It follows that the order of the Corporation Commission is affirmed.

All the Justices concur.