ATCHISON, T. & S. F. RY. CO. v. STATE *et al.*

No. 2098.  Opinion Filed March 21, 1911.

(114 Pac. 721.)

1.  **RAILROADS—Order of Corporation Commission—Review—Burden of Proof.**  On appeal from an order of the Corporation Commission, requiring additional facilities of a railway company, if there is any evidence reasonably tending to support the order of the Commission, the prima facie presumption of the order's being reasonable, just, and correct obtains by reason of section 22, art. 9, of the Constitution, and the burden is upon appellant to overcome that presumption.

2.  **SAME—Reasonableness—Evidence.**  Appellant's evidence examined, and held not sufficient to overcome the prima facie presumption of the reasonableness, justness, and correctness of the order appealed from.

(Syllabus by the Court.)

*Appeal from Corporation Commission.*

Proceedings by the State and others against the Atchison, Topeka & Santa Fe Railway Company. From an order of the Corporation Commission, directing defendant to stop certain trains when flagged at a specified station, defendant appeals. Affirmed.

*Collingham & Bledsoe,* for appellant.

*Chas. West,* Atty. Gen.  (*C. J. Davenport,* of counsel), for appellees.

HAYES, J.  This appeal is from an order of the Corporation Commission, directing appellant to stop on flag at the station of Belva trains Nos. 113 and 114.  The evidence given before the Commission by petitioners in support of their right to the order, in substance, was that the town of Belva has a population of about 30 people; that the immediate country around it is thickly settled, there being an average of one family to each quarter section; that appellant runs passenger trains east and west each day which meet at Belva at about 1:30 in the afternoon.  Appel-

lant's line of railway is the only means the people in the town of Belva and vicinity have to reach the county seat by railway. Trains 113 and 114, which are, by order of the Corporation Commission, required to stop at Belva, pass through that point at 12:55 and 12:25, in the night, but neither of them stop at Belva. There are no other trains run upon this road that carry passengers; and with only two passenger trains, one going each way, stopping at Belva in the afternoon, persons boarding the train at Belva can go to no point on the line of appellant's railway and return in less than 24 hours. It is about five miles each way upon its line of railway to the next stations, at both of which stations all of appellant's passenger trains stop. Appellant filed before the Commission no answer or other pleading to the petition, but was permitted by the Commission to offer testimony in opposition to the petition.

Appellant's vice president, who has charge of the management of its line of railway on which Belva is located, was asked the following question:

"You state to the Commission the objection of the company to the stopping of the trains requested in this proceeding and whether the numbers of the trains are correctly given?"

Answer:

"Yes, sir; the numbers are 113 and 114. 113, west-bound, and 114, east-bound. When the trains Nos. 117 and 118 were made exclusive passenger trains, we cut out the stops from Wellington, Kan., to Amarillo, Tex., wherever the towns were small in a business line, in order to make the time of the heavier trains. Cut out stops on 113 and 114 because they were heavier trains, in order to make the time, because we had put on this exclusive daylight local passenger instead. The principal reason for not stopping at Belva, it is a small town, as stated by Mr. Boles; only has about 30 inhabitants at this station. The only complaint that they have to make, as I understand it, they want to go to court and get back the same day, and they could not attend court without practically losing two days by not using the night trains. We have reduced the grades on all of these lines. From Belva to Curtis we reduced the grade one-half, and it still remains nearly twice as heavy as the other grades. To stop 113 would cause

them to lose a great deal more time on the lighter grades, that portion being 53 feet to the mile, and the rest of the road only about half that. If we allowed a stop at Belva, we ought to allow it at a great many other smaller stations; then we could not make time. The train was made up solid at Kansas City and goes through to Amarillo over this night route. No passenger trains over this new route is the principal reason we put the exclusive daylight passenger train on, making all stops everywhere."

There is also evidence on behalf of appellant that the total receipts from the sale of passenger tickets at this station for the month of July preceding the trial before the Commission in the month of October were $76.32, and for the month of August, $52.38; that trains Nos. 113 and 114 are interstate trains, carrying mail. The evidence in this case, both in support of the order of the Commission and in opposition thereto, is very meager and consists principally of generalities and conclusions, rather than of a detailing of the facts necessary to enable this court best to determine the reasonableness and justness of the order.

It is the settled rule in cases on appeal from the Corporation Commission that, if there is any evidence reasonably tending to support the order of the Commission, the *prima facie* presumption of the order's being reasonable, just, and correct obtains by reason of section 22, art. 9, of the Constitution. The burden upon appeal in this court is then upon appellant to overcome that presumption. *Ft. Smith & W. Ry. Co. et al. v. State,* 25 Okla. 866, 108 Pac. 407; *St. Louis & S. F. R. Co. v. Newell et al.,* 25 Okla. 502, 106 Pac. 818.

Appellant's objections to this order, as they appear from the testimony of its vice president, quoted *supra,* are: First, that the grade of its road at and near Belva is such that to stop these trains will cause one of them to lose a great deal more time than on the lighter grades. Second, if it is required to stop its trains at Belva, it ought to stop them at all the other small stations. While there is evidence that these trains are interstate trains and carry mail, there is no evidence that they are fast trains, or that the stopping of them at this station will interfere with their

schedule or with their connection with other trains. Nor is there any evidence as to what the additional cost to the company of stopping these trains at the time required by the order will be. The evidence discloses that the passenger receipts for the months of July and August preceding the hearing before the Commission were small; but whether these are the average monthly receipts of this station the evidence fails to disclose. That the stopping of these trains will entail some additional expense upon appellant is evident; but that such additional expense will operate as pecuniary loss to the appellant is not established. These trains are not required to stop every time they pass this station, but only when there are passengers upon such trains to leave the trains at that point, or when there are passengers desiring to enter these trains at this point. Nor does the suggestion necessarily follow that if these trains are required to stop at Belva they would have to be stopped at all other stations of similar size, for the reason that at no other station on this road do the day trains meet each other. The farther any station is from Belva on this road the more time intervenes between the passing of the day trains going in opposite directions, and the more time is afforded to patrons on the road to embark upon one of these trains and transact business at other points upon the road and return upon the other train; but the patrons at Belva, with the present schedule and facilities afforded them, are without opportunity to go to any point upon the company's line of railway and return in less than 24 hours.

In *M., K. & T. Ry. Co. v. Town of Witcher et al.,* 25 Okla. 586, 106 Pac. 852, the facts were, in some respects, similar to the case at bar, and in that case it was said:

"The term 'adequate facilities' is not capable of exact definition, being a relative term, and calls for such facilities as may be fairly demanded, regard had to the size of such station or place, the extent of the demand of transportation; its relative location to other places, the cost of furnishing the additional accommodations asked for, and all other facts which would have a bearing upon the question of convenience and cost."

In the same opinion it was also said:

"There has been no effort to show that the stopping of these

two trains would operate as a pecuniary loss to the appellant, nor does it appear that such stoppage would reasonably prevent or hamper the interstate connections contemplated. It is true that Witcher is a small town, having only four or five dwelling houses, three store buildings, a gin, elevator, and blacksmith shop, but the adjacent or tributary country is thicky settled and a nearby city of the size of Oklahoma City would naturally be the general trading point of such people. In addition, it is the county seat in which the county offices are located, and the people necessarily have frequent occasion to go to transact business arising with such officers."

In the case at bar, one of the beneficial purposes that will be accomplished by stopping these trains on flag will be to enable the patrons of appellant at that point to go to their county seat and transact their business and return within half the time they otherwise could. While the facts disclosed by the record supporting the order of the Commission, as stated by the Commission in its order, might not be sufficient to require additional trains to be run to furnish to these patrons the facility which they seek, in the absence of any showing by appellant that this order will entail pecuniary loss upon it or hamper these trains in making their interstate connections, we are unable to say that the *prima facie* presumption of the reasonableness and justness of the order of the Commission has been overcome.

The order of the Corporation Commission is affirmed.

TURNER, C. J., and DUNN and KANE, JJ., concur; WILLIAMS, J., not participating.