## OKLAHOMA RY. CO. v. STATE.

No. 4166. Opinion Filed February 11, 1913.

(130 Pac. 151.)

CARRIERS—Fares—Order of Corporation Commission. Appellant's evidence examined, and held sufficient to overcome the prima facie presumption of the reasonableness, justness, and correctness of the order appealed from.

(Syllabus by the Court.)

*Appeal from the State Corporation Commission.*

From an order of the Corporation Commission fixing rates of the Oklahoma Railway Company, the latter appeals. Reversed.

*Shartel, Keaton & Wells,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for the State.

TURNER, J. This is an appeal from an order of the Corporation Commission requiring that appellant, operating an interurban railway through Britton to Edmond, shall charge ten cents for all students attending the Wesleyan Female College

from College Park station to Oklahoma City and from Oklahoma City to College Park station, and shall sell round-trip tickets to all others at not exceeding 25 cents each, or single trip tickets at not exceeding fifteen cents each, to take effect on and after March 24, 1912.

In support of the order W. A. Shelton testified before the commission that he was president of said college; that they were trying to establish a school out there, to accomplish which it was necessary to have the patronage of Oklahoma City; that it was almost impossible so to do at a rate that cost the students 30 cents each day for the round trip from the city; that the college was in the corporate limits of Britton, which enjoyed a ten-cent rate; that the distance was about the same to College Park station as to Putnam City, which had that rate, and that said rate would, in his opinion, increase the attendance of the school and travel to and from the city; that the distance from Main street in Britton to the college was about a half mile; that the enrollment of the college was about 90, about half of which were boarding students and most of the remainder residents of Oklahoma City, and that the present ten-cent rate ends about two blocks north of Britton and somewhere near a mile and a half from College Park station. O. F. Sensebaugh, presiding elder of the Oklahoma City district of the M. E. Church South, and a member of the board of trustees of the college, stated that the rate to and from the school had much to do with its patronage; that the school was indorsed by the annual conferences and others representing a membership of about 65,000 and a constituency of three or four times that in the state; that they expected to make it one of their great schools, and wanted to be given the best opportunity possible to do so. It was his opinion that it would be to the best interest of the company to grant the rate because of the increased patronage it would have, but did not know of any road whose rate for nine or ten miles was a dime on interurban cars. This was all the evidence adduced in support of the order.

In opposition thereto John W. Shartel testified: That College Park is on the interurban running from Oklahoma City to

Edmond, the total length of which from the terminal station within the city to First street in Edmond is fifteen and one-tenth miles, and the through rate on appellee's car 25 cents, with the following breaks: "From terminal station to Belle Isle station four and one-half miles, five cents; from Belle Isle station to Britton station, five cents; from Britton station past College Park station to the next break in fare, two and one-fourth miles north of Britton station, five cents; from said point two and one-fourth miles, five cents; from said last-named point to Edmond, five cents; the distance from College Park station to Oklahoma City terminal station being nine and six-tenths miles." That College Park is on the third section towards its north end, and about three-fourths miles from the twenty-cent rate, and that at that time said line was not paying over two-thirds actual operating expenses. That the rate to Putnam City is ten cents for a distance of eight and two-tenths miles, which was two-tenths miles longer than that to Britton. That the rate to Bethany, which is four-tenths miles closer and a much larger school, is fifteen cents and no reduction. That other suburban lines of the company were not paying a fair value, neither was appellant's road as a whole. That appellant had taken money which might have been paid to its stockholders on the main system and appropriated it to the upkeep of these outside lines, waiting for the people to move in and build up the country. That a ten-cent rate to this school would result in charging ten cents for ten miles, and fifteen cents for five miles from that point on to Edmond, or would result in having to cut out five cents on the Edmond run and hauling through for twenty cents.

As a part of the record, the commission, pursuant to Const. art. 9, sec. 22, files for our consideration a written statement of the reasons upon which the order is based. The material part of it reads:

"It is insisted by the defendant that this line is being operated at a loss. No figures were submitted to the commission showing the earnings and expense, and evidence that only states conclusions is as a rule unsafe to predicate a finding of facts, therefore no finding will be made upon that point. The president of the college and the presiding elder for this district state that this

college was established by the Southern Methodist Church, and is known as the Wesleyan Female College. This church represents a membership of about 65,000 people, and a constituency of about three or four times that amount in Oklahoma and adjoining states. They proposed to make it one of the great schools of the West, and it is insisted by these witnesses that, if proper rates were given from Oklahoma City, it would have a tendency to more than double the attendance. It does not cost the company but slightly more, if any, to operate cars filled with passengers than it does to operate them comparatively empty. The reduction of rates does not always reduce gross revenue. It has been the policy of the commission going over the statistics in regard to passenger rates in general that the reduction of rates more often increases revenue than diminishes it. For an additional distance of slightly over one mile beyond Britton the defendant insisted on charging five cents additional fare. The commission is of the opinion based on all the evidence and circumstances in this case that rate of ten cents from Oklahoma City to College Park station for all students attending the college would be reasonable, and that it would have a tendency and would in fact increase the travel without increasing the expense; that a rate for all other than students should be fifteen cents for single trips or should be 25 cents for the round trip. Our conclusions in this case are argumentative, in that all interurbans, street railways, and steam railroads give commutation tickets to any number of people who regularly go to and from a given point."

If there is any evidence reasonably tending to support the order, the *prima facie* presumption that the same is reasonable and just obtains by reason of Const. art. 9, sec. 22, otherwise not. *A., T. & S. F. Ry. Co. v. State,* 28 Okla. 476, 114 Pac. 721. Such there is not. The most that can be said in favor of the order is that it is based upon testimony merely expressive of a desire for the rate in order to build up the school. This is no substantial basis for the order. But opposed to this is the uncontradicted evidence of Mr. Shartel as follows:

"That line is being operated, and, with the possible exception of June, July, and August, has been operated ever since it opened, at a loss. By a loss I mean to say the payment of the actual operating expenses of the line itself without any return for interest on the investment or any allowance for depreciation. The line is being and has been run at a loss, and at the present time from Oklahoma City through Britton to Edmond is not paying

over two-thirds of its actual operating expense. The giving of a rate of a cent a mile or a cent and a tenth or whatever it figures out for that distance out there would mean that for every ten cents we take in we would be paying out at least fifteen."

As stated by us in *A., T. & S. F. Ry. Co. et al. v. State,* 27 Okla. 820, 117 Pac. 330 :

"Courts are not permitted to disregard the uncontradicted evidence of competent, unimpeached witnesses. If an order requires evidence to support it and all the evidence introduced is to the effect that the order is unreasonable, and ought not to be made, it seems axiomatic to say it would be error to enter it."

And so we say that, as this order is based upon testimony merely expressive of a desire for the rate and in opposition to uncontradicted evidence, in effect, that such a rate, if enforced, would compel appellant to operate at a still greater loss, the same is unreasonable and unjust.

It is therefore reversed, and the rate thereby sought to be displaced is ordered to stand.

HAYES, C. J., and KANE and DUNN, JJ., concur; WILLIAMS, J., not participating.