## CHICAGO, R. I. & P. RY. CO. v. STATE et al.

No. 16936. Opinion Filed July 19, 1927.

(Syllabus.)

1. **Carriers—Motor Carriers — Public Convenience and "Necessity" Justifying License to Operate.**

Where the existence of public convenience and necessity is a prerequisite to the authorization of a motor carrier to furnish services as required by section 4, ch. 113, Session Laws of Oklahoma, 1923, the word "necessity" means a public need, without which the public is inconvenienced to the extent of being handicapped in the pursuit of business or wholesome pleasure, or both—without which the people generally of the community are denied, to their detriment, that, which is enjoyed by other people generally, similarly situated.

2. **Same—Appeal from Order of Corporation Commission Issuing Permit for Motor Bus Line—Burden on Appellant to Shew Order Unreasonable.**

On appeal from an order of the Corporation Commission issuing a certificate of public convenience and necessity to operate a motor bus over the public highways, if there is any evidence reasonably tending to support the order of the Commission, the prima facie presumption of the order's being reasonable, just and correct obtains by reason of section 22, art. 9 of the Constitution, and the burden is upon appellant to overcome that presumption.

3. **Same—Order Supported by Evidence.**

Evidence examined, and held, that evidence is sufficient to support the order of the Corporation Commission.

4. **Same.**

Evidence examined, and held, appellant's evidence insufficient to overcome the prima facie presumption of the reasonableness, justness, and correctness of the order appealed from.

Commissioners' Opinion, Division No. 2.

Appeal from the Corporation Commission.

Application by Red Ball Bus & Baggage Company, a corporation, for a certificate of public convenience and necessity to operate a motor bus as common carrier of passengers. From an order granting the certificate, protestant, the Chicago, Rock Island & Pacific Railway Company, appeals. Affirmed.

W. R. Bleakmore, John Barry, A. T. Boys, and W. F. Collins, for plaintiff in error.

Clark Owsley, for the Corporation Commission.

George F. Short, Atty. Gen., and William L. Murphy, Asst. Atty. Gen., for the State.

Simons, McKnight & Simons, for defendant in error Red Ball Bus & Baggage Company.

JEFFREY, C. The Red Ball Bus & Baggage Company, a corporation, filed its application with the Corporation Commission under chapter 113, Session Laws of Oklahoma, 1923, and rule 11 of Order No. 2219 of the Commission, asking for a certificate of public convenience and necessity to operate a motor bus as a common carrier of passengers over and upon the public highways from Enid, Okla., to El Reno, Okla., by way of Waukomis, Bison, Hennessey, Dover, Kingfisher, and Okarche, paralling the railroad of the Chicago, Rock Island & Pacific Railway Company. The railway company filed a written protest to the issuance of said certificate, setting out in substance that all of the towns reached on said proposed bus line were regular stations on its railroad; that adequate facilities were provided for the receipt and delivery of passengers, sufficient for the transportation of the traveling public; and that there was no necessity for the establishment of a motor bus line over said route. The railway company appeared at the hearing on said application, and offered evidence against the issuance of said certificate. After taking testimony in support of and against said application, the Corporation Commission on the 7th day of July, 1925, made certain findings and issued its order granting a certificate of public convenience and necessity to said applicant, from which findings and order the plaintiff in error, the Chicago, Rock Island & Pacific Railway Company, has appealed to this court.

Five assignments of error are presented, but are briefed under one specification of error, to wit:

"The order of the Corporation Commission is not supported by sufficient evidence."

That portion of the findings and order of the Corporation Commission which is complained of and with which we have to deal is as follows:

"1. That the applicant is engaged in the business of the transportation of passengers for compensation upon and over the highways of the state of Oklahoma, and as such is within the jurisdiction of the Commission as is provided by chapter 113, Session Laws of Oklahoma 1923.

"2. That the said applicant has substantially complied with the requirements of said chapter 113, Session Laws of Oklahoma 1923, and with rule 11 of Order No. 2219 of this Commission, governing the filing of applications for certificates of convenience and necessity, authorizing the operation of motor vehicles over the highways.

"3. That the Chicago, Rock Island & Pacific Railroad Company operates passenger service between said termini.

"4. That the applicant has executed and filed with this Commission liability insurance policy for the sum of $5,000 for any one person injured and $10,000 for protection against injury or other results of any one accident, and $1,000 for protection of property against damage due to accident, and that applicant has filed with the Commission a satisfactory bond in the penal sum of $100 conditioned on the payment of all fees, taxes or charges, which may be due the state of Oklahoma.

"5. That convenience and necessity are shown by the evidence in support of the application herein to justify and require the issuance of a certificate of convenience and necessity to the said applicant for the operation of a motor vehicle as a motor carrier."

The evidence upon which the above findings and order were made is substantially as follows: C. E. Mehew, president and manager of the Red Ball Bus & Baggage Company, testified that he was engaged in the taxi and baggage business at Enid; that he was financially able to operate the bus line; that the train schedule from Enid to El Reno and Oklahoma City over the plaintiff in error's road was insufficient and inconvenient for quite a few people in Enid and in the small towns along said route between Enid and El Reno; that there was no train service from Enid south to El Reno between the hours of 1:00 o'clock a. m. and 11:00 o'clock a. m.; that by his proposed schedule the bus would leave Enid at 7:00 a. m., make all of the small towns, and arrive in El Reno at 10:00 a. m.; that he had talked with a great number of the people in all of the towns along said proposed route; and that every one that he had talked with desired the establishment of the bus

line. H. W. Manning testified that he was proprietor of the Oxford Hotel, the principal hotel in Enid; that he heard a great deal of complaint about the train service from Enid south, the most of this complaint being from traveling salesmen; that two of the trains between Enid and El Reno each way did not stop at Waukomis, Bison, Hennessey, Dover, and Okarche; that the proposed bus schedule would permit one from the north to make earlier connections at El Reno for Oklahoma City, and thus permit them to make the trip to Oklahoma City and back in much less time; and that public convenience and necessity demanded the issuance of the permit. Then a resolution of the Chamber of Commerce of Enid was introduced setting forth that the train schedule of the Chicago, Rock Island and Pacific Railway was not adequate to meet the demands of the traveling public for the reason that the first train of each day was too early, and the second train was too late for the convenience of the public, and stated that public convenience and necessity demanded the issuance of a permit to operate the proposed bus line. Two additional petitions signed by more than 100 persons, residents in the towns along said proposed route, stated that there was a necessity for the operation of a motor carrier over the proposed route, and asking for the issuance of the certificate.

The contestant offered its time-tables in evidence, which are as follows:

El Reno to Enid:

| Train No. | Leave El Reno | Arrive Enid |
|---|---|---|
| 18 | 3:50 a. m. | 5:20 a. m. |
| 22 daily, except Sunday | 9:00 a. m. | 11:00 a. m. |
| 24 | 4:00 p. m. | 6:00 p. m. |
| 32 | 7:45 p. m. | 9:30 p. m. |
| Local freight | 7:00 a. m. | 11:15 a. m. |

(Leaves from El Reno yard)

Enid to Oklahoma City (via El Reno):

| Leave Enid | Arrive Okla City |
|---|---|
| About 1:00 a. m. | — — |
| 11:00 a.m. | 2:25 p. m. |
| 4:00 p. m. | 7:15 p. m. |
| 9:30 p. m. | 12:00 a. m. |

The evidence further shows that one of the five trains each way between Enid and El Reno is a local freight, and that its time of arrival at the stations along the route is somewhat indefinite, depending upon the amount of business on each haul; and that two trains each way only stop at Kingfisher between Enid and El Reno; and only two passenger trains each way stop at Waukomis, Bison, Hennessey, Dover, and Okarche, leaving El Reno at 9:00 a. m. and 4:00 p. m., respectively, and arriving in Enid two hours later. The first train leaving Enid after 1:00 a. m. is at 11:00 a. m., and stops at all stations between Enid and El Reno. The evidence does not disclose which south-bound train is the second local train. There is further evidence to the effect that the reason for not stopping the four passenger trains is that sufficient people do not travel on the trains at the small stations to justify the stops, and, further, that the railway company is furnishing such service as it deems necessary, and is able to furnish such service to the traveling public as is needed. Several persons testified that the train service was good and adequate, and no necessity existed for the bus line. The proposed schedule of the bus line is to leave Enid at 7:00 a. m., stop at all intermediate stations, and arrive at El Reno at 10:00 a. m.; leave El Reno at 1:00 p. m., stop at all intermediate stations, and arrive at Enid at 4:00 p. m. The evidence in this case, both in support of the application and in opposition thereto, is somewhat unsatisfactory, is rather meager, and consists principally of generalities and conclusions, rather than a narration of the facts necessary to enable this court to best determine the reasonableness and justness of the order.

What constitutes such a public convenience and necessity as would warrant the issuance of a certificate to a motor carrier under the act? And what shall be the measure of the exercise of the powers of this court when reviewing the orders of the Corporation Commission granting or denying such certificates? The first question, while a new one, was recently passed upon by this court in the case of Chicago, R. I. & P. Ry Co. v. State, 123 Okla. 190, 252 Pac. 849, and will be referred to more particularly hereafter. It will be necessary to inquire what meaning the Legislature intended to give to the expression in the light of the whole act, and to refer to the judicial construction thereof, and to the construction of similar acts. Section 4 of the act reads in part as follows:

"It is hereby declared unlawful for any motor carrier to operate or furnish service within this state without first having obtained from the Corporation Commission a certificate declaring that public convenience and necessity require such operation. The Corporation Commission shall have power, and it shall be their duty after public hearing, to issue said certificate as prayed for or to refuse to issue the same. * * *"

The act deals with three subjects—motor carriers, public highways, and the public. The Legislature is not interested in the motor carriers except in so far as they desire to use the public highways for private gain, and to serve the public. The public high-

ways, of course, are built for the benefit of the public. So, the principal party to be benefited by the act is the public. By the act it is not intended to promote competition between and among common carriers, but, on the other hand, it is intended that common carriers, railroads and motor carriers alike, should receive a fair measure of protection against ruinous competition, with a view that the public may be better served. It has never been the policy of Legislatures to enact legislation for the benefit of individuals or classes of individuals, except so far as the same would directly affect the public interest. In attempting to define or limit the term "necessity," as used in the act, we must deal with something to which the public is entitled. In the case of Chicago, R. I. & P. Ry. Co. v. State, supra, in the second paragraph of the syllabus thereof this court said:

"In the statute requiring the issuance of a certificate of public convenience and necessity as a prerequisite to the operation of a motor carrier, the word 'necessity' is not used in the sense of being essential or absolutely indispensable, but in the sense that the motor vehicle service would be such an improvement of the existing mode of transportation as to justify or warrant the expense of making the improvement. It should be made to appear that the inconvenience of the public occasioned by the lack of motor carrier transportation is so great as to amount to a necessity."

This definition is somewhat ambiguous and uncertain as to its scope and meaning. In the first place, the two parts thereof appear to be contradictory. In the first part of the definition it is said that "necessity" is not used in the sense of being essential or absolutely indispensable, and in the last part it is said that the inconvenience of the public occasioned by the lack of motor carrier transportation should be so great as to amount to a necessity. If the word "necessity" in the last part of the definition is used in its ordinary sense, the definition is too harsh. The Supreme Court of Illinois, in construing the expression in an act similar to ours, in the case of Wabash C. & W. Ry. Co. v. Commerce Commission, 309 Ill. 412, 141 N. E. 212, said:

"When the statute requires a certificate of public convenience and necessity as a prerequisite to the construction or extension of any public utility, the word 'necessity' is not used in its lexicographical sense of 'indispensably requisite.' If it were, no certificate of public convenience and necessity could ever be granted. The first telephone was not a public necessity under such a definition, nor was the first electric light. Even the construction of a waterworks system in a village is seldom necessary, though highly desirable. However, any improvement which is highly important to the public convenience and desirable for the public welfare may be regarded as necessary. If it is of sufficient importance to warrant the expense of making it, it is a public necessity."

Necessity, as here used, could not mean indispensable, which is the more common meaning of the term. While a condition might arise where motor transportation of this sort might be indispensable to an individual or several individuals, such could never be the case with the public. A much less urgency will meet the requirements. As used in this connection, "necessity" means a public need, without which the public is inconvenienced to the extent of being handicapped in the pursuit of business or wholesome pleasure or both, without which the people generally of the community are denied, to their detriment, that which is enjoyed by other people generally, similarly situated.

Keeping in mind the meaning of the expression public convenience and necessity, is the order of the Commission supported by the evidence? There is no rule of law better settled in this jurisdiction than in cases on appeal from the Corporation Commission, that the prima facie presumption of the order's being reasonable, just and correct obtains by reason of section 22, art. 9 of the Constitution, if there is any evidence reasonably tending to support the order of the Commission. The burden upon appeal in this court is then upon appellant to overcome that presumption by pointing to some evidence in the record which rebuts the evidence relied on. A., T. & S. F. Ry. Co. v. State, 28 Okla. 476, 114 Pac. 721, and other cases therein cited. There has been no deviation from this rule by this court. Chicago, R. I. & P. Ry. Co. v. State et al., 123 Okla. 41, 251 Pac. 1041; A., T. & S. F. Ry. Co. v. State et al., 23 Okla. 210, 100 Pac. 11; A., T. & S. F. Ry. Co. v. Miller et al., 28 Okla. 109, 114 Pac. 1104; M., K. & T. Ry. Co. v. State et al., 24 Okla. 331, 103 Pac. 613.

It is true that the evidence upon which the order is based is not entirely satisfactory, but this is necessarily true to some extent by reason of the character of proof attempted. The evidence shows that between the hours of 1:00 a. m. and 11:00 a. m. there is no public conveyance from Enid to El Reno, and that it is proposed to operate a bus leaving Enid at 7:00 a. m., stopping

at all intervening towns and arriving at El Reno at 10:00 a. m. The evidence further shows that between the hours of 9:00 a. m. and 4:00 p. m. there is no public conveyance from El Reno to Enid; and that under the proposed bus schedule a bus will leave El Reno at 1:00 p. m., stopping at all intervening stations and arriving at Enid at 4:00 p. m. The evidence discloses that there is a great deal of complaint about the train service; that it is difficult to go from Enid and other towns along the proposed route to Oklahoma City without the loss of a great deal of time. So, there is some very pertinent evidence which tends to support the order and findings, and when accompanied with the prima facie presumption by reason of section 22, art. 9, Oklahoma Constitution, this court will not disturb the order of the Commission, unless it appears from the record that such presumption has been overcome. Chicago, R. I. & P. Ry. Co. v. State et al., supra; A., T. & S. F. Ry. Co. v. State, 28 Okla. 476, 114 Pac. 721; Wabash, C. & W. Ry. Co. v. Commerce Commission, 309 Ill. 412, 141 N. E. 212.

To set aside an order of the Corporation Commission as being unjust, unreasonable, or arbitrary, it is not sufficient for this court to think the order unwise. It is within the province of the Corporation Commission to pass upon the wisdom of the proposed undertaking by a public utility. That Commission is presumed to be peculiarly experienced and fitted for that purpose, and having seen and heard the witnesses, and being in possession of data and information not obtainable by this court, it would be unwise to give the orders of the Commission any less recognition. To do otherwise would place the ultimate decision in every case with this court, and substitute the findings of this court for that of the Corporation Commission.

Plaintiff in error calls our attention especially to the following authorities: Chicago, R. I. & P. Ry. Co. v. State, 123 Okla. 190, 252 Pac. 849; Ex parte Tindall, 102 Okla. 192, 227 Pac. 125; West Suburban Transportation Co. v. Chicago & W. T. Railway Co. (Ill.) 140 N. E. 56; Choate v. Illinois Commerce Commission (Ill.) 141 N. E. 12; Wabash, C. & W. Ry. Co. v. Commerce Commission, 309 Ill. 412, 141 N. E. 212.

In the case of Chicago, R. I. & P. Ry. Co. v. State, supra, the court said there was no evidence of a lack of facilities from station to station at the time of the application, and no competent evidence to support the

order directing the issuance of a certificate of public convenience and necessity. Based on the record, as recited, we think the conclusion reached is correct, but to the extent indicated above, that is, with reference to the definition of a public necessity, that opinion is hereby modified. The Tindall Case involves a habeas corpus proceeding in which the motor carrier act was challenged as being unconstitutional. The court in a very exhaustive opinion sustains the constitutionality of the act, and with reference to the phase with which we are dealing said:

"Where the exercise of powers conferred upon the Corporation Commission by an act, is conditioned upon the actual existence of a public necessity, and the finding as to such necessity is subject to review by a judicial tribunal of authorized jurisdiction, the Commission is thereby shorn of arbitrary or capricious powers, should it in any instance attempt to exercise such powers."

That is, unquestionably, a correct statement of the law as applied to this case, so far as it goes. In the case at bar we are confronted with the inquiries, what constitutes a necessity as intended by the act, and under the settled rule of this court, is the evidence sufficient to support the order, or is the order arbitrary and capricious?

An examination of the decisions of the Supreme Court of Illinois above referred to discloses that they are by no means in accord as to what extent the powers of review of that court should be exercised with reference to orders of the Commerce Commission on appeal. While the facts in the West Suburban Transportation Case, supra, distinguishes it from this case, it is apparent that the court does not indulge the presumption to the orders of the Commerce Commission to which the orders of the Corporation Commission are entitled in this state. The same is to an extent true in the Choate Case, supra. In the case of Wabash, C. & W. Ry. Co. v. Commerce Commission, supra, a newly organized railway company applied to the Commerce Commission for a certificate of public convenience and necessity to construct a short road to a coal deposit for the purpose of assisting in the opening and developing of a coal mine. This was the chief reason for the issuance of the certificate. The proposed road paralleled three existing roads and no point to be served by it was more than four miles from a railroad, and the application was contested by the existing roads as in this case. On the question before us the court said:

"Perhaps it is questionable whether the

development of such a mine is a matter of public convenience and necessity. In some communities it is regarded so and we are not prepared to say the Commerce Commission had no substantial evidence on which to find it so."

There are two lines of decision from that court. One is based upon the expediency or wisdom of the findings of the Commission, and the other indulges a prima facie presumption in favor of the orders of the Commission that they are reasonable, just, and correct when supported by any evidence reasonably tending to support the same. There being some evidence reasonably tending to support the order of the Corporation Commission, and having examined appellant's evidence, we are unable to say that the prima facie presumption of the reasonableness and justness of the order of the Commission has been overcome.

The order of the Corporation Commission is affirmed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 10 C. J. p. 649, §1069. (2) 10 C. J. p. 650. §1069. (3) 10 C. J. p.649, §1069. (4) 10 C. J. p. 650, §1069.