## CHICAGO, R. I. & P. RY. CO. v. STATE et al.

No. 17924. Opinion Filed June 12, 1928.

(Syllabus.)

Railroads—Corporation Commission's Jurisdiction Over Crossings—Order for Separation of Grade Supported by Evidence not Disturbed on Appeal.

The Corporation Commission, by virtue of sections 3491, 3492 and 3494, C. O. S. 1921, is vested with jurisdiction over all public highway crossings where the same cross electric or steam railroads, and to require a separation of grade at any such crossing heretofore established when practicable. And where such an order is made, and there is some evidence tending to support the order to the effect that such change is practicable, and that public safety and convenience reasonably require it, the same will not be set aside on appeal to the Supreme Court.

Commissioners' Opinion, Division No. 2.

Appeal from the Corporation Commission.

Complaint by the Board of County Commissioners of Garfield County for an order requiring the Chicago, Rock Island & Pacific Railway Company to construct an under-grade crossing where a public highway crosses said railway company's tracks. From an order requiring the construction of such undergrade crossing, the Chicago, Rock Island & Pacific Railway Company appeals. Affirmed.

W. R. Bleakmore, John Barry, and A. T. Boys, for plaintiff in error.

Dan Mitchell, Co. Atty., for defendants in error.

J. D. Holland and E. S. Ratliff, for the Corporation Commission.

JEFFREY, C. This is an appeal by the Chicago, Rock Island & Pacific Railway Company, from order No. 3643 of the Corporation Commission made on August 26, 1926, requiring the appellant to construct an underpass under its tracks for a public highway crossing in Garfield county. The complaint was filed by the chairman of the board of county commissioners of Garfield county, and a hearing was duly had thereon, upon which hearing the Commission made its findings and order, and assessed the cost of such improvement equally between Garfield county and appellant. That portion of the order necessary to a discussion of the question here raised is as follows:

"Plan and estimate as to cost of underpass had been filed with the Commission and complainants. The evidence disclosed that complainants had under construction a hard surfaced highway, which was partially completed, from Covington to Garber, through the Garber oil fields, extending north from the proposed underpass. The grade crossing complained of is on a fill, narrow with high center, hard for automobiles to pass on fill and poor drainage. The grade approach on the north side of the railway on highway is approximately 11 per cent. The general topography of the ground near the crossing is depressed and has a tendency to obstruct the view of train and approaching automobiles. The highway crossing is located at the west end of the Garber yard. Garber being an oil as well as an agricultural community causes a great amount of carload movement of freight to and from the town, and necessitates the highway crossing to be blocked frequently far in excess of regular train movement. The defendant contends that the train movement over its Billings branch is light as there is but one regular train each way daily. It is also contended by defendant that the embankment at crossing could be widened, the grade reduced and crossing protected by signal. When the railway is extended from Billings to Ponca City, the train movement will be increased, but in any event the switching over the highway crossing will not be decreased.

"Defendant's estimated cost of constructing underpass is $11,096.35 as per plan submitted, dated April 3, 1926. It further illustrates, on situation plan dated March 5, 1926, the general layout of the proposed underpass at location described above. The width of the right of way at location of proposed underpass varies. In section 25 the situation plan shows right of way to be 462 feet wide and in section 26, 100 feet wide.

"After giving the matters and things in-

volved due consideration, the Commission is of the opinion and finds that it is to the best interest of all parties concerned that an underpass on the Chicago, Rock Island & Pacific Railway on section line, as prayed for by the board of county commissioners of Garfield county, be installed. Proposed underpass to be located about 1,100 feet west of the railway station at Garber on section line between sections 25 and 26, tp. 23 N., R. 4 W. I M.

"It is, therefore, the order of the Commission, premises considered, that the Chicago, Rock Island & Pacific Railway Company construct underpass, as per its plan dated April 3, 1926, approved and on file with the Commission, and do the grading for underpass which must provide a vertical clearance of 14 feet from the bottom of deck of bridge to top of paving. The grading limits for underpass for defendant north and south, are based on their right of way limits in section 25 as shown on situation plan."

The only assignment of error here presented is that the order of the Commission is not supported by any evidence, and is unreasonable, unjust, arbitrary and capricious.

By section 3491, C. O. S. 1921, the Corporation Commission is given full jurisdiction over all public highway crossings where the same cross steam or electric railroads within this state. Section 3492, C. O. S. 1921, provides that the expense of construction and maintenance of public highway grade crossings shall be borne by the railroad or railway company involved. And provides further that for overgrade or undergrade public highway crossings, the assignment of costs and maintenance shall be left to the discretion of the Corporation Commission; provided, that, in no event, shall the municipality be assessed more than 50 per cent. of the actual cost of the overgrade or undergrade crossing. Section 3494, C. O. S. 1921, is as follows:

"The Corporation Commission shall have exclusive jurisdiction to determine and prescribe the particular location of highway crossings, for steam or electric railways, the protection required, to order the removal of all obstructions as to view of such crossings, to alter or abolish any such crossings, and to require, where practicable, a separation of grade at any such crossing, heretofore or hereafter established."

Several of these sections are construed in M., K. & T. Ry. Co. v. State, 82 Okla. 221, 200 Pac. 208, and there given a literal interpretation. See, also, M., K & T. Ry. Co. v. State, 107 Okla. 23, 229 Pac. 172. The foregoing statutory provisions do not au-

thorize the Corporation Commission to order a separation of grade at any such crossing, in an arbitrary and capricious manner, even though it be practicable to do so. It would hardly be contended that the Commission was vested with power to order such improvement where the same entailed a great expense unless there was public reasons for so doing. Such an order, without the existence of such a reason, would be unjust, arbitrary and beyond the power of the Commission to make and enforce. Public safety and convenience are certainly good and sufficient reasons for the exercise of such powers. If it reasonably can be said that public safety and convenience requires the change, it is for the Corporation Commission to say whether the change or improvement shall be made.

In view of section 22, art. 9, of the Constitution of Oklahoma, if there is any evidence reasonably tending to support the Commission's order, the prima facie presumption that such order is reasonable, just and correct obtains. C., R. I. & P. Ry. Co. v. State, 126 Okla. 48, 258 Pac. 874, and other cases therein cited. To set aside the order, as being unjust, unreasonable or arbitrary, it is not sufficient for this court to think the order unwise. The wisdom of requiring such a change rests exclusively with the Corporation Commission. With these principles in mind, is there any evidence reasonably tending to support the order of the Commission?

Only four witnesses testified in the case, three for complainant and one for the respondent. The testimony in support of the complaint is substantially as follows: That Garfield county was engaged in the construction of a hard surface highway which crosses appellant's railway track, about 1,100 feet west of its depot at Garber, Okla., the plans for which contemplate an undergrade crossing at the point in question: that the highway and crossing are already established and in use; that the particular section of the road which includes the crossing in question had not been hard surfaced, and a test was then being made as to whether it would be surfaced with gravel, concrete or asphalt; that the railroad tracks at this point are constructed on a fill which is approximately 20 feet wide at its crown and stands 20 feet higher than the natural ground a short distance away to the north, and about four feet higher than the natural ground or road to the south. The evidence shows that the traffic over this highway is heavy. it being in the vicinity of oil development and also

in an agricultural section. There had been no actual traffic census made, but the county engineer testified that by comparison with other roads on which an accurate census had been made he estimated that approximately 600 vehicles passed over this section of the road per day. Another witness testified that he counted the traffic which passed over the road during a period of 45 minutes, and that during this time 35 trucks passed along. The evidence shows that the crossing is dangerous on account of difficulty in making the stop before crossing the railroad tracks in compliance with the law, especially when approaching from the north; and that it is difficult while approaching said railroad tracks to see approaching trains or other automobiles coming from the opposite direction until one arrives almost at the crest of the fill. The evidence further shows that this crossing is but a short distance from the side tracks in appellant's yard at Garber, and that appellant's train, while switching cars, frequently runs out upon and across highway and causes unusual delay in traffic while this switching is being done. The plans offered for the construction of the underpass called for an expense of $11,096.35. The county engineer of Garfield county testified that to improve the crossing as a grade crossing by filling in the depressions would cost approximately $4,377. Appellant contends that the order is unreasonable and amounts to an abuse of discretion, since practically all objections could be removed by grading up the approaches to said crossing at a much less expense than that necessary to install the underpass as ordered. Appellant's engineer testified that the grading of the approaches could be done for approximately $1,200. But the extent of this inquiry is, Was there any competent evidence reasonably tending to support the order made? or, on the other hand, Did the Commission abuse its discretion and make an unreasonable and arbitrary order? Section 3492 provides that the expense of construction and maintenance of public highway grade crossings shall be borne by the railroad or railway company involved. While, on the other hand, the expense of an undergrade highway crossing may be assessed in part against the municipality, not to exceed 50 per cent. of the actual cost. It is admitted that all the dangers and inconveniences which now exist could not be eliminated by building up the grade approaching appellant's tracks, but that public traffic would still be annoyed and endangered by appellant's regular trains and switching

movements. In addition to this, the evidence disclosed that the appellant proposed o increase its train service from one train a day each way to two trains a day each way over its road.

In view of the evidence above summarized, we are of the opinion that there is competent evidence reasonably tending to support the order made. As above pointed out, appellant's one-half of the expense in constructing the undergrade crossing is not much in excess of the entire expense of building up the existing grade. The proposed undergrade crossing will eliminate all dangers and inconveniences to the public which now exist by reason of said crossing, while the other plan proposed by appellant would not eliminate the danger and inconvenience resulting from the moving trains and switch engines, nor the dangers incident to traveling upon a high fill.

The order of the Corporation Commission is therefore affirmed.

TEEHEE, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 33 Cyc. p. 300.