## MISSOURI, K. & T. R. CO. v. STATE et al.

No. 12342—Opinion Filed July 12, 1921.

(Syllabus.)

**1. Railroads — Highway Crossings — Jurisdiction of Corporation Commission.**

In sections 1, 2, and 3 of Senate Bill No. 143, chapter 53, Session Laws of 1919, the Corporation Commission is given full jurisdiction over all public highway crossings, where same cross steam or electric railroads or railways, within the state of Oklahoma.

**2. Same—Undergrade Crossing—Liability of Railroad for Total Cost.**

Under section 2 of the Laws above referred to the expense of construction and maintenance of overgrade or undergrade public highway crossings over or under steam railroads shall be left to the discretion of the Corporation Commission; the only restriction being that the Corporation Commission shall not assess or charge more than 50 per cent. of such expense of construction and maintenance to the city, town, or municipality. It was within the discretion of the Corporation Commission to assess and charge defendant railway company with the entire cost of the construction and maintenance of the undergrade crossings in question.

**3. Same—Discretion of Commission—Appeal.**

In the absence of an abuse of such discretion on the part of the Corporation Commission, its ruling will not be disturbed by this court on appeal.

Appeal from Corporation Commission.

Proceedings before the Corporation Commission against the Missouri, Kansas & Texas Railway Company to require said railway company to construct and maintain certain undergrade crossings in Atoka County. From this order, the railway company appeals. Affirmed.

M. D. Green and H. L. Smith, for appellant.

E. S. Ratliff, for appellees.

MILLER, J. This is an appeal by the Missouri, Kansas & Texas Railway Company, as plaintiff in error, from order No. 1867 of the Corporation Commission, made on May 7, 1921, requiring the appellant to pave, drain, and otherwise repair and maintain two certain undergrade crossings in Atoka county. The order appealed from, omitting the formal parts, reads as follows:

"After receiving Mr. Johnson's letter of the 21st, the commission instructed their engineer, Mr. Thompson, to make an inspection and report to the commission as to the condition of highway at and near bridges No. 620.7 and No. 621.62. The inspection was made on March 30th, and Mr. Thompson reported that the Jefferson Highway off of right of way was in reasonable condition, but that the highway at and near the above named bridges was badly in need of repair, being almost impassable; that motor cars were constantly being stuck in the mud.

"After receiving the engineer's report, the commission docketed the complaint and set the date for hearing on April 12, 1921, at ten o'clock a. m. commission's court room, Oklahoma City. At the hearing evidence was produced, and substantiated by maps and photographs, that the Jefferson Highway off the M. K. & T. right of way, near bridges No. 620.7 and 621.62, was in good condition, but on right of ways and subways of above numbered bridges was in bad repair; that at bridge No. 621.62, on the west side of subway it would be necessary to install two joints of vitrified pipe that had been washed out; fill washout and protect end of pipe with concrete headwall at east end of subway, and fill mudholes with broken stone.

"That on the east side of subway, the drain pipe under roadway is too short, causing washout and mudholes; that same should be extended east to open ditch and protected by concrete headwall or rip-rap; that the outlet of drain box that passes through the south abutment on east end is cutting out and should be protected by rip-rap; that there should be a surface ditch made on the east side of embankment, north of highway, running from the borrow pit east to open ditch—this to keep the water from flooding highway at the east end of subway.

"That as to subway No. 620.7, it should be paved under bridge and to end of wing wall excavation being made before paving, to allow all vertical clearance possible; subways to have properly prepared and protected drainage.

"The commission being fully advised in the premises, and having given full consideration as to the facts, it is therefore ordered that the M., K. & T. Railway Company repair roadway at and under bridge No. 621.62 by installing two joints of vitrified pipe on the west side of subway, that has washed out, protecting the end with concrete headwall and filling in washout; filling in mudhole with broken stone at east end of subway; providing drain box where the present corrugated iron pipe is on east side of highway, extending same east to open ditch, filling washout and protecting east end of 3 x 3 drain box with rip-rap; opening up a surface ditch from borrow pit on east side of embankment, just north of subway from borrow pit southeast;

"Also opening drain at bridge No. 620.7; paving under bridge and to end wing wall, paving to be eight inches thick and to slope to the northeast so that all water entering subway will run to the northeast corner of wing of subway, and to outlet in open ditch; installing drain box in mudhole on east and west side of subway, filling in mudhole and around box with broken stone. The finished roadway from east and west side of right of way to paving at bridge, to be at least 16 feet wide at top, and have top finished with broken stone or gravel.

"The Atoka county commissioners are to have the ditch cleaned out from the east end of subway to where the drainage is carried across the Jefferson Highway on .05 grade, lengthening the pipe crossing Jefferson Highway about eight feet and lowering same six inches."

The appellant makes three assignments of error as follows:

"1. The Corporation Commission of Oklahoma had no jurisdiction to make the order complained of, and constitutes a taking of appellant's property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States and in violation of the Constitution of the state of Oklahoma.

"2. The commission's order is unreasonable and unjust and is abuse of discretion on the part of the commission, in that it directs the paying and improvements to be made at the sole cost and expense of appellant.

"3. The commission's order is void, in that it is indefinite and uncertain."

We will discuss these assignments of error in the order named.

The Corporation Commission proceeded under Senate Bill No. 143, chapter 53, Session Laws of Oklahoma, 1919 (Harlow, p. 88). Sections 1, 2, and 3 of said bill relate to this procedure, and are as follows:

"Section 1. The Corporation Commission is given full jurisdiction over all public highway crossings, where same cross steam or electric railroads or highways within the state of Oklahoma.

"Section 2. The expense of construction and the maintenance of public highway grade crossings shall be borne by railroad or railway company involved. For over-grade or undergrade public highway crossings over or under steam or electric railroad or railway, the assignment of cost and maintenance shall be left to the discretion of the Corporation Commission; but in no event shall the city, town or municipality be assessed with more than fifty per cent. (50 per cent.) of the actual cost of such overgrade or undergrade crossings.

"Section 3. In all actions arising before the Corporation Commission the same rules as to procedure, notice of hearing and trial, and as to appeals to the Supreme Court, shall be applicable as are prescribed for said commission, as to transportation companies generally; and the same rules applicable to the enforcement of other orders of the Corporation Commission as to transportation companies shall be applicable to the enforcement of any order or orders made hereunder."

The appellant in support of its contention says:

"It is a matter of common knowledge that the main line of the Missouri, Kansas & Texas Railway through Oklahoma was constructed on a land grant right of way granted under an act of Congress of July 25, 1866, 14 U. S. Statutes at Large 236-9, the road then being known as the Union Pacific Railroad Company, Southern Branch. There is no provision in said act of Congress requiring the railroad to construct grade, overgrade or undergrade crossings at its own expense or to provide the right of way therefor. It is also a matter of common knowledge that the railroad was constructed in the years 1872 and 1873 and, while it appears from the record that the crossing under bridge 620.7 is at a section line, yet that fact alone would not make such a crossing a legal highway as the act of Congress of April 26, 1906, 34 United States Statutes 145, declaring section line roads in that part of the old Indian Territory to be highways, was passed long after the railroad's rights were acquired and highways could not have been lawfully established across the railroad's premises without its consent unless condemnation proceedings had first been had, and due and proper award of damages made to the railroad therefor and this court has so held. St. Louis & S. F. R. Co. v. Love et al., 29 Okla. 523, 118 Pac. 259; A., T. & S. F. R. Co. v. Corporation Commission, 29 Okla. 534, 118 Pac. 263; St. Louis & S. F. R. Co. v. Corporation Commission, 35 Okla. 166, 128 Pac. 496; A., T. & S. F. R. Co. v. State, 40 Okla. 411, 138 Pac. 1026.

"As to the allotments of Indians, this court has also held that the act making section lines highways did not affect the rights of allottees whose allotments had been made prior to that time. See Good et al. v. Keel et al., 29 Okla. 325, 116 Pac. 777, syllabus No. 1 of which is as follows:

"'Act Cong. April 26, 1906, c, 1876, 34 Stat. 145, sec. 24, pertaining to public highways in the Choctaw, Chickasaw, and Seminole Nations, is prospective in its operation, and does not authorize the highway officials of the state to take and condemn without compensation a strip one rod on each side of the section line traversing the allotment of a full-blood Indian, whose land was alloted prior to the passage of said act.'

"These authorities are cited to the court for the reason that it appears from the record that the highway formerly crossed the railroad at a grade crossing and that, while probably the crossings were later changed by common consent, to go under the bridges in question, there was no condemnation or award of damages to the railway company and there was no division of the cost and expense of the construction and maintenance of the bridges and so far as the record discloses no part of the burden of maintaining these undergrade crossings has ever been assumed by the county, as it is contemplated by the 1919 law above referred to."

The cases cited by appellant have no application.

In St. Louis & S. F. R. Co. v. Love et al., supra, the syllabus reads:

"The jurisdiction to open public highways and crossings over railway rights of way is vested in the local authorities, and not in the Corporation Commission of the state; and, where no highway or crossing has been lawfully established and opened over the right of way of a railroad, the said commission has no jurisdiction to determine the character of the crossing to be provided, and require its installation, and, where in such a case it makes an order requiring a specific kind of crossing, jurisdiction is vested in this court to issue a writ of prohibition to prevent its enforcement."

In the case of Atchison, T. & S. F. Ry. Co. v. State, supra, the syllabus reads:

"The jurisdiction to open public highways and crossings over railway rights of way is vested in the local authorities, and not in the Corporation Commission of the state; and, where no highway or crossing has been lawfully established and opened over the right of way of a railroad, the said commission has no jurisdiction to determine the character of the crossing to be provided, and require its installation."

The other cases cited by appellant are of similar import; but this is sufficient to show what was decided in those cases. It will be observed that these opinions are based on the rights of the railroad in opening up highways across the right of way where no road had been opened up. In the case at bar the road had already been opened up, and by agreement of parties, in which the appellant consented, the crossings were changed from a grade crossing to an undergrade crossing. Therefore, these cases have no application.

Appellant next contends that the order is unreasonable because it places all the cost

of the improvements on the railroad company. Section 2, Senate Bill No. 143, supra, is the section that governs the assignment of costs and maintenance. This is left to the discretion of the Corporation Commission, and unless there is an abuse of discretion, this court will not make any change in the order on appeal. The only limitation on the Corporation Commission's discretion is that it shall not assess more than fifty per cent. (50 per cent.) of the actual cost of such overgrade or undergrade crossing to the city, town, or municipality. There may be cases in which it would be unfair or unjust to charge the railway company with all of the costs of either an overgrade or undergrade crossing. In such case the Corporation Commission may equitably adjust the assessment. We have examined the record in this case, and cannot say that the Corporation Commission abused its discretion.

Appellant's next contention is that the order is void because it is indefinite and uncertain. We do not think it is subject to that criticism. We have examined the order, and we think an engineer of ordinary intelligence can take this order and go upon the ground and, after making his surveys, carry out the letter and spirit of the order. The object of the order is to make an undergrade crossing at each of the places specified, so that wagons, automobiles, and other vehicles may pass through or over the crossings without the necessity of hitching on extra teams or trucks to pull such vehicles out of the mud as shown in the pictures which are a part of the record in this case. The order sufficiently outlines the essential steps to be taken in constructing these undergrade crossings that, if faithfully followed, will bring the results sought to be obtained by the order of the Corporation Commission.

Finding no reversible error, the order of the Corporation Commission is affirmed.

PITCHFORD, V. C. J., and KANE, JOHNSON, and KENNAMER, JJ., concur.