**MISSOURI, K. & T. R. CO. v. STATE et al.**

*No. 13975—Opinion Filed Dec. 11, 1923.*

Rehearing Denied Sept. 30, 1924.

(Syllabus.)

**1. Corporation Commission — Powers—Constitutional Provisions.**

The various sections of article 9 of the Constitution create the Corporation Commission, confer and define certain duties and powers, and vest it with certain specific jurisdiction, and section 19, Id., after conferring certain jurisdiction upon the Corporation Commission to control corporations within the state, provides: "The commission may be vested with such additional powers and charged with such duties * * * as may be prescribed by law."

**2. Railroads — Jurisdiction of Corporation Commission Over Highway Crossings.**

Pursuant to the power conferred upon it by the above constitutional provision, the Legislature, by chapter 15, Comp. Stat. 1921, vested the Corporation Commission with additional jurisdiction and powers and charged it with additional duties, among which is as follows: "The Corporation Commission is given full jurisdiction over all public highway crossings where same cross steam or electric railroads or railways within the state of Oklahoma."

**3. Same — Construction of Crossings — Assessment of Cost.**

Under the foregoing section, in connection with other sections of chapter 15, Comp. Stat. 1921, the Corporation Commission has full jurisdiction over all public highway crossings and has authority to order such crossings to be constructed as it may be petitioned by proper authorities to do, and authority to make an estimate of the cost of construction of such crossings and to assess the cost of same against the petitioners and the railroad company, according to its sound discretion and judgment, and to enforce. as provided by law, its orders for the construction of same.

**4. Eminent Domain — Taking Railroad Right of Way for Public Use—Procedure.**

Article 2, section 24, of the Constitution provides specifically: "Private property shall not be taken or damaged for public use without just compensation." Hence, where a railroad company owns the fee in its right of way, such right of way cannot be appropriated or damaged for public use without compensation, either by amicable settlement or by proper condemnation proceedings.

**5. Same — Prerequisite to Construction of Highway Crossing — Damage to Fee in Right of Way.**

Where a city has selected the point for the construction of a grade crossing over a railroad, and upon a petition the Corporation Commission has ordered the railroad company to construct such grade crossing, it can not enforce obedience to such order until after the question of damage to the fee in its right of way has been determined, either by amicable settlement or by proper condemnation proceedings. In such case it is immaterial whether the estimate of cost of construction of such crossing be made first, or whether the estimate of damage to the right of way be made first, but it is necessary that the point of crossing should be made before either could be accurately made. Provided, however, that the order of the Corporation Commission for the construction of such crossing cannot be enforced in any event, until the damage to the right of way has been determined by amicable settlement or by proper condemnation proceedings.

Appeal from Order of Corporation Commission.

From Corporation Commission's order relating to construction of a highway crossing, upon complaint of the City of McAlester, the Missouri, Kansas & Texas Railway Company appeals. Affirmed.

M. D. Green and H. L. Smith, for appellant.

E. S. Ratliff and Horton & Gill, for appellees.

HARRISON, J. This action involves the jurisdiction of the Corporation Commisison to order crossings over or under transportation lines where there is a public demand for same. The action in question arose out of a demand by the city of McAlester for a crossing under Comanche avenue in said city, to be constructed, in part at least, by the plaintiff in error, Missouri, K. & T. Ry. Co.

The facts necessay to reveal the material circumstances in the case may be observed from a resolution passed by the council of said city, September 19, 1921, and final hearing had thereon May 10, 1922, together with the finding of facts, opinion, and order of the Corporation Commission, which are as follows:

"Whereas, Comanche avenue is one of the public highways and streets of the incorporated city of McAlester, Oklahoma, and one of the main thoroughfares and highways connecting and between the Second and Third wards of said city, each of said wards containing a large population, and having located in each of them public schools of the city, the public school of the Third ward being located on said Comanche avenue, and the said Comanche avenue running through the central portions of said Second and Third wards; and, whereas, there exists at the intersection of said Comanche avenue and the roadbed, tracks and right of way of the Missouri, Kansas & Texas Railway Company, a steam railway company, a very high embankment, which completely obstructs passageway along said Comanche avenue between the said Second and Third wards and many other portions of said city, thereby greatly impeding the travel in said city and access of citizens to and from different points therein and communication with each other, and retarding the improvement and development of said city; and, whereas, by reason of the premises a public necessity exists for a crossing upon, over, or under the said track, roadbed, and right of way of said Missouri, Kansas & Texas Railway Company where said Comanche avenue intersects therewith.

"Now, therefore, be it resolved by the mayor and city council of the city of McAlester, Oklahoma, that the said city of McAlester make application to the Corporation Commission of the state of Oklahoma for an order requiring said Missouri, Kansas & Texas Railway Company and Chas. E. Schaff, its receiver operating its properties, to construct and maintain a public highway crossing at the intersection of Comanche avenue with the tracks of said railway company as aforesaid; and that the city manager and the city attorney of said city are hereby directed, authorized, and empowered to, for and in the name of said city, to make said application to said Corporation Commission and to do all acts and things necessary and proper in and about the presentation and prosecution of said application.

"Passed and approved this 19th day of September, 1921.

"Hearing was had in the city hall of the city of McAlester on May 10, 1922."

"Findings of Fact, Opinion and Order.

"On September 29, 1921, application was filed with the Corporation Commission by petition signed by the mayor, city attorney, city manager and others, asking the Corporation Commission to require the Missouri, Kansas & Texas Railway Company to install an underpass under their tracks and provide highway crossing their right of way on what is known as Comanche avenue in the city of McAlester. The case was docketed and set for hearing, but was postponed from time to time by request of applicants and defendant. It was finally heard before Commissioner Russell in the city hall of McAlester on May 10th, 1922, all parties interested being duly notified. J. W. Horton, city attorney, and E. M. Fye, city manager, representing complainants; M. D. Green, Atty., and Z. G. Hopkins, assistant chief, operating officer, representing the defendants, and A. I. Thompson, for the Corporation Commission.

"It was disclosed at the hearing that McAlester is subdivided in four wards, the railroads being the boundary; the Rock Island traversing through the city east and west and the M., K. & T. north and south, the passenger depot being located at the railroad crossing in the S. E. corner. The testimony further disclosed that a large population of the city of McAlester lived both east and west of the proposed crossing, and the opening prayed for under the M., K. & T. tracks on Comanche avenue would be of great benefit to the citizens of McAlester, and especially to the citizens living in that portion south of the Rock Island, west of the M., K. & T.

"A copy of the city ordinance No. 74 was presented, showing an agreement between the city of McAlester and the M., K. & T. Railway in the city of McAlester. This ordinance was passed by the city on the 8th

day of November, 1901, which provided for certain crossings and how the city could acquire other crossings, and provided for Comanche avenue crossing, to wit, 'Should any other street or alley way except Washington or Comanche avenue, be opened across, over, or under the right of way, station grounds, and tracks of the railway company, the city shall pay to the said railway company as agreed, stipulated, and liquidated damages, the sum of ten thousand dollars ($10,000.00) for each and every other of said crossings, and in addition thereto damages equal to the actual value of any buildings or other improvements of the railway company damaged or destroyed by the opening of any street or crossing; provided, that nothing herein contained shall constitute a waiver on the part of the railway company to contest the opening of any additional streets other than those herein provided for.'

"The Railway Company filed brief covering the above stipulation, contending that the commission was without jurisdiction in reference to this application, setting forth various decisions. The commission interprets the 1919 Session Laws to give them full jurisdiction over highway crossings where highway passes over or under, or at grade of steam or electric railroads or railways.

"The evidence disclosed that the crossing asked for is essential; that the Katy south from the Rock Island crossing is on a high fill for a major portion of the distance in the corporate limits. The topography in the vicinity of the proposed crossing makes Comanche avenue the most practicable route to and from the business district of McAlester, especially from the south half of the city; that the present highways in the vicinity of Comanche are inadequate and hazardous and are located, to wit: From Comanche boulevard, Delaware avenue is located 1569½' north. This crossing is an underpass and takes care of the drainage from Sand creek and the sewerage from the city. The nearest crossing south of Comanche avenue is on Ottawa avenue. It is a grade crossing and is located 730' of Comanche avenue. If Comanche avenue was provided it would be of material benefit for east and west traffic and especially to residents living in the southwestern portion of the city.

"The commission, after giving all facts due consideration, and realizing the necessity of grade separation where same is practical, it is therefore ordered that the M., K. & T. Railway Company prepare a plan for reinforced concrete subway on Comanche avenue as prayed for by applicants, the plan to provide for two openings of not less than 14' horizontal and 12' vertical clearance, together with an estimated cost showing quantities. The plan for underpass to show the location of drainage and industrial tracks, the track to conform to highway

grade on Comanche avenue. The above estimate and plan is to be filed with the mayor of McAlester and the Corporation Commission on or before August 15, 1922.

"It is further ordered that on the failure of the M., K. & T. Railway Company and the city of McAlester to agree on the apportion of cost in the construction of underpass on Comanche avenue, the commission will hear further evidence covering the division of cost or change in plan, the date to be set when the applicants or defendants advise the commission that they are unable to agree as to the division of cost.

"It is further ordered that the M., K & T. Railway Company shall have the underpass on Comanche avenue in the city of McAlester constructed and opened for traffic within 90 days from the date the city of McAlester has arranged to pay their apportionment of cost of constructing the subway.

"Done at Oklahoma City, Oklahoma, this 16th day of June, 1922."

Plaintiff in error complains of this order upon two material grounds:

First. Lack of jurisdiction.          g

Second. Lack of sufficient facts to warrant the exercise of jurisdiction, if by law it had jurisdiction.

The authority under which the Corporation Commission acted in this particular was conferred by an act of the Legislature, 1919, pursuant to authority vested in it by section 19, article 9, of the Constitution.

The various sections of article 9 of the Constitution create the Corporation Commission, define certain specific duties and powers, and section 19, Id., after conferring certain jurisdiction upon the Corporation Commission to control corporations within the state, provides:

"The commission may be vested with such additional powers and charged with such other duties * * * as may be prescribed by law."

The above provision constitutes a special grant of authority to the Legislaure to confer additional jurisdiction, powers, and duties upon the Corporation Commission to those specifically conferred by the Constitution, and, pursuant to authority thus conferred upon it, the Legislature, by act of S. L. 1919, page 88, vested the Corporation Commission with the additional jurisdiction, powers, and duties provided for in said act. The section of said act which controls in the present case (the same being section 3491, Comp. Stat. 1921) is as follows:

"The Corporation Commission is given full jurisdiction over all public highway crossings, where same cross steam or electric railroads or railways within the state of Oklahoma."

This section was construed by this court in M., K. & T. Ry. Co. v. State et al., 82 Okla. 221, 200 Pac. 208. and there given literal interpretation of the wording of the statute. Inasmuch as the first section of the act, the same being section 3491, supra, which says:

"The Corporation Commission is given full jurisdiction over all public highway crossings"

—could not mean anything else than that no other administrative board or body has jurisdiction over such matters, the fact that section 2 of the act authorizes the Corporation Commission in overgrade or undergrade public highway crossings to make an assignment of the cost of maintenance of the same, and the fact that in the express words the assignment of the maintenance and cost of such crossings shall be left to the discretion of the Corporation Commission, supports and carries out the original idea suggested and provided for in the first section, the only limitation placed upon the Corporation Commission being that no more than 50 per cent. of the cost of maintenance shall be assessed against the municipality, and the further fact that under section 3 hearings had in such matters shall be under the same rules and procedure. etc., as in other matters and the same right of appeal given to the Supreme Court as in other cases, emphasizes the intention of the Legislature to confer jurisdiction in such matters upon the Corporation Commission alone.

To acquire jurisdiction in such matters the Corporation Commission is. of course, confined to its ordinary rules and common reason. If it be an individual's rights affected, perhaps the petition of the individual would be sufficient. If it be a municipality, jurisdiction could be acquired by the ordinary rules as to administrative boards authorized to represent municipalities in such matters. In the case at bar, it is a city council, through its city attorney.

We hold, therefore, that there was no question as to the Corporation Commission having properly acquired jurisdiction, and no question, under the statute, but that it had authority to exercise jurisdiction.

This view of the question of jurisdiction is supported by M., K. & T. Ry. Co. v. State, 82 Okla. 221, 200 Pac. 208, also by C., R. I. & P. Ry. Co. v. Taylor, 79 Okla. 142, 192 Pac. 349, and supported, as to comparatively every phase involved, in an exhaustive opinion by Mr. Justice Holmes in Erie Ry. Co. v. Bd. of Public Utility Comrs., 65 L. Ed. (U. S.) 322. Mr. Justice Holmes, in the body of the opinion, after deciding that the

right of states to regulate railroad crossings is a proper exercise of police power, has the following to say in regard to the establishment and maintenance of grade crossings:

"Grade crossings call for a necessary adjustment of two conflicting interests,—that of the public using the streets, and that of the railroads and the public using them. Generically the streets represent the more important interest of the two. There can be no doubt that they did when these railroads were laid out, or that the advent of automobiles has given them an additional claim to consideration. They always are the necessity of the whole public, which the railroads, vital as they are, hardly can be called to the same extent. Being places to which the public is invited, and that it necessarily frequents, the state, in the care of which this interest is, and from which, ultimately, the railroads derive their right to occupy the land, has a constitutional right to insist that they shall not be made dangerous to the public, whatever may be the cost to the parties introducing the danger. That is one of the most obvious cases of the police power; or, to put the same proposition in another form, the authority of the railroads to project their moving masses across thoroughfares must be taken to be subject to the implied limitation that it may be cut down whenever and so far as the safety of the public requires. It is said that if the same requirement were made for the other grade crossings of the road it would soon be bankrupt. That the states might be so foolish as to kill a goose that lays golden eggs for them has no bearing on their constitutional rights. If it reasonably can be said that safety requires the change, it is for them to say whether they will insist upon it, and neither prospective bankruptcy nor engagement in interstate commerce can take away this fundamental right of the sovereign of the soil. Denver & R. G. R. Co. v. Denver, 250 U. S. 241, 246, 63 L. Ed. 958, 962, 39 Sup. Ct. Rep. 450. To engage in interstate commerce the railroad must get on to the land; and, to get on to it, must comply with the conditions imposed by the state for the safety of its citizens. Contracts made by the road are made subject to the possible exercise of the sovereign right. Denver & R. G. Co. v. Denver, 250 U. S. 241, 244, 63 L. Ed. 958, 961, 39 Sup. Ct. Rep. 450: Union Dry Goods Co. v. Georgia Public Service Corp., 248 U. S. 372, 63 L. Ed. 309, 9 A. L. R. 1420, P. U. R. 1919 C, 60, 39 Sup. Ct. Rep. 117; Louisville & N. R. Co. v. Mottley, 219 U. S. 467, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671, 31 Sup. Ct. Rep. 265; Northern P. R. Co. v. Minnesota, 208 U. S. 583, 52 L. Ed. 603, 28 Sup. Ct. Rep. 341; Manigault v. Springs, 199 U. S. 473, 480, 50 L. Ed. 274, 278, 26 Sup. Ct. Rep. 127. If the burdens imposed are so great that the road cannot be run at a profit, it can stop, whatever the misfortunes the stopping may produce. Brooks-Scanlon Co. v. Railroad Commission, 251 U. S. 396, 64 L. Ed. 323, P. U. R. 1920 C. 579, 40 Sup. Ct. Rep. 183.

"Intelligent self-interest should lead to a careful consideration of what the road is able to do without ruin, but this is not a constitutional duty. In the opinion of the courts below the evidence justified the conclusion of the board that the expense would not be ruinous. Many details as to the particular situation of this road are disposed of without the need of further mention by what we have said thus far."

This case, like the case of C., R. I. & P. v. Taylor, supra, clearly shows the regulation of street railway crossings and maintenance in such form as to be safe to the public is the proper exercise of the police power of the state; and Erie R. R. Co. v. Board of Public Utilities, supra, Southern Kansas R. Co. v. Oklahoma City, 12 Okla. 82, 69 Pac. 1050, clearly support the theory that if the state has power, in the absence of contract as to same, it has power to force a railroad to construct such crossings at its own expense and without compensation for the use of its right of way. But in the case at bar it is conceded that there was no contract between the federal government and the M., K. & T. Ry. Co. in its charter; that the M., K. & T. Ry. should grant this crossing without compensation for the damage done to its right of way. Section 24, article 2, of the state Constitution provides specifically:

"Private property shall not be taken or damaged for public use without just compensation."

The section then goes on to prescribe the manner in which damage to same may be ascertained and compensation awarded. The section is self-executing in its provisions, therefore the Legislature has provided no means in conflict therewith, nor has it the authority to do so. Under this provision of the Constitution the right of the state or a municipality thereof to appropriate public property to a public use cannot be exercised until reasonable compensation for damage to the fee is awarded. But the contention that compensation for damage to the fee should have been awarded upon the selection of the point of crossing and the estimate of cost of building such crossing at such point is wholly without merit.

As we view the matter, it is immaterial whether the estimate of damage to the fee or the estimate of cost of constructing the crossing should be made first; in other words, it is immaterial so far as the law is concerned as to which estimate is made first, but it stands to reason that neither

estimate could be made until the point for the crossing be first selected; after such point for the crossing is selected, the fact that the Corporation Commission made the estimate of the cost of construction of the crossing before the award was made as to the damage to the fee does not affect the jurisdiction of the Corporation Commission nor the validity of the estimate it made. The fact is that the proper authorities for the city selected the point of crossing and the Corporation Commission, upon the evidence submitted, made an estimate of the cost of construction thereof and assessed the cost of same to the parties interested, viz., the city of McAlester and the railroad company. The statutes, however, prohibit the Corporation Commission from assessing more than 50 per cent. of the cost of construction to the city, and as it assessed only 50 per cent. of such cost to the city, its order should be, and is, sustained.

We hold, however, that in this case, it appearing that the railroad company owns the fee in the right of way and that its charter contains no provision that it shall part with such fee without compensation, the order of the Corporation Commission for the railroad company to construct such undergrade crossing cannot be enforced until after an amicable settlement between the city of McAlester and the railroad company, or until after an award for damages to the fee is determined by proper condemnation proceedings instituted by the city in the courts as provided by statute, and that when such is done and the damages to the fee determined by the courts, then the order of the Corporation Commission for the construction of such crossing may be enforced as the law provides.

JOHNSON, C. J., and KENNAMER, COCHRAN, and BRANSON, JJ., concur.