## PROTEST OF DOWNING et al.

No. 24181. Opinion Filed June 13, 1933.

Rehearing Denied June 27, 1933.

Lewis R. Morris, Co. Atty., and B. C. Logsdon, Asst. Co. Atty., for Oklahoma County.

W. H. Brown, Municipal Counselor, and Harlan T. Deupree, Asst. Municipal Counselor, for Oklahoma City.

Hal C. Thurman, for Board of Education of Oklahoma City.

George M. Callihan and Bruce & Jefferson (of counsel) for protestees.

Gordon Stater, for protestants.

SWINDALL, J. This case involves an appeal from the judgment of the Court of Tax Review. Protest was filed by several taxpayers and upon the hearing before the Court of Tax Review were consolidated and tried as one case, being styled in that court V. L. Downing et al., No. 533, Consolidated. Upon the trial in the Court of Tax Review the consolidated protest was sustained in part and overruled in part. The protestants have appealed from that portion of the judgment which disallows the protests in part, and the protestees have appealed from that portion of the judgment sustaining the protests in part.

It is urged by some of the protestees that, under Initiative Law 100 (O. S. 1931, secs. 12305-12315), approved August 7, 1928, creating the Court of Tax Review, providing the procedure therein, and defining the powers and duties of said court, said court does not have power and jurisdiction to declare a law enacted by the Legislature unconstitutional. The constitutionality of portions of several acts of the Legislature are involved in this appeal and some of them are declared unconstitutional by the Court of Tax Review. We will, therefore, consider that proposition first. What are the powers conferred upon the Court of Tax Review? Section 2 of that act (O. S. 1931, sec. 12306), among other things, provides:

"Taxpayers of the state shall have the right at all times, to examine the budgets and levies on file with the respective county clerks of the state and with the State Auditor, for the purpose of checking the same for illegalities in the levies made, and any taxpayer may, at any time within 40 days from the date of filing with the State Auditor, as above provided for, file a protest in writing, together with three copies thereof, with the State Auditor against any alleged illegality of any levy, and the State Auditor shall thereupon transmit by registered mail one copy of each to the county clerk, the county attorney, and county treasurer of the county affected thereby or said protest with the same number of copies may be filed with the county clerk, in which event the county clerk shall transmit one copy of each to the State Auditor and to the county attorney and county treasurer of the county affected thereby, and such filing shall have the same force and effect as though filed with the State Auditor. The said protest shall specify the said alleged illegal levy and the grounds upon which said alleged illegalities are based. Any protest filed by any taxpayer as herein provided shall inure to the benefit of all taxpayers."

Section 3 of the act (O. S. 1931, sec. 12307), creates the Court of Tax Review and provides that the court shall meet at the State Capitol on the first Monday in October of each year and proceed to hear all protests which shall have been filed at least five days prior thereto, and shall convene on the first Monday in each month thereafter until all protests shall have been heard and determined by it. Section 4 (O. S. 1931, sec. 12308), provides, among other things, that said court shall have the power, and it shall be its duty to hear and determine all protests filed under this act. So it will be seen that the power and jurisdiction of the Court of Tax Review is to hear and determine protests against alleged illegal levies and the grounds upon which the said alleged illegal levies are based. The word "illegal," as employed in the act under consideration, has been defined in many decisions. The word "illegal" means contrary to law. United States v. Mulvey, 232 F. 513, 519. The term "illegal," in its common acceptance, signifies that which is contrary to the principles of law as distinguished from rules of procedure. Bretz v. El Reno State Bank, 71 Okla. 283, 177 P. 362, 363. An illegal assessment, that is, an assessment wherein, independently of the exercise of a discretion as to value, there appears prejudicial and material error in matter of law, shall usually constitute grounds for equitable interference. City of Tampa v. Palmer, 89 Fla. 514, 105 So. 115, 120. Within General Municipal Law (Consol. Laws, c. 24), section 51 (N. Y.), allowing taxpayers to maintain action to prevent illegal official act by any officers, etc., the words "illegal official act" relate to acts germane to the purpose

of the legislation, which was to extend the remedy for the protection of taxpayers against frauds and peculations of public officials and to prevent unsurpation of power not granted, imperiling public interests, and the mere illegality of the officiel act in and of itself held not to justify relief. Schierfelin v. Craig, 170 N. Y. S. 603, 609, 183 App. Div. 515. Illegality is properly predicable of radical defects only, and signifies that which is contrary to the principles of law as distinguished from mere rules of procedure. It denotes a complete defect in the proceedings. In re Davis, 118 Ore. 693, 247 P. 809. See also, Words & Phrases, Third Series, vol. 4, pp. 46-48. "Illegal" means that which lacks authority of, or support from, law. Thompson v. Dody, 72 Ind. 338. The word "illegality" is synonymous with "unlawfully." State v. Haynorth, 35 Tenn. (3 Sneed) 64, 65. The illegal "assessments for which a party has a remedy by petition, under the provisions of section 1542, Rev. St. (Fla.), are assessments wherein, independently of the exercise of discretion as to value, there appears error in matter of law. The remedy given by the statute does not extend to individual assessments made by a tax assessor where the alleged illegality is confined entirely to, or results solely in, an excessive value of the property, whether such excessive value resulted from an erroneous exercise of judgment as to value, or from the adoption of an erroneous principle in placing values." Jackson County v. Thornton. 44 Fla. 610, 33 So. 291, 292. See, also, Words & Phrases, First Series, vol. 4, pp. 3388. 3389; also, Second Series, vol. 2, p. 935. We hold that the word "illegal," as employed in the act, means contrary to law.

It is only where an act of the Legislature is clearly, palpably, and plainly inconsistent with the terms and provisions of the Constitution that the courts will interfere and declare such act invalid and void. Munroe v. McNeill, 122 Okla. 297, 255 P. 150. However, if an act of the Legislature is clearly unconstitutional and the same affects a tax levy and the illegality of the levy is challenged on that ground, we hold that the Court of Tax Review has the power and authority to declare the same unconstitutional. The judgment of that court would be binding only upon the particular case under consideration, and is subject to review on appeal by this court, for the act may be held constitutional in a later proceeding involving the constitutionality of the act by this court.

Since this case was briefed and argued. the parties have filed motions to dismiss the protests as to certain items and some of the protestees have confessed error as to some of the items. We feel it our duty to consider each item regardless of the act of the parties in this case, for the reason that the protest filed by any taxpayer shall inure to the benefit of all taxpayers. We will consider the motions to dismiss and the confessions of error, and where we feel that the appellant should be permitted to dismiss, we will approve the dismissal, and if we conclude that the confessions of error are proper, we will vacate the judgment of the Court of Tax Review upon such items of the levy; otherwise we will enter such order as we feel is our duty under the law relative to appeals from the Court of Tax Review. The protestants moved the court to dismiss their appeal as to the following items, to wit:

| | |
|---|---|
| Oklahoma County General Fund, appropriation for jail physician and drugs | $4,000.00 |
| Oklahoma County General Fund, appropriation for county commissioners for overseeing roads and bridges | 1,800.00 |
| Oklahoma County General Fund, appropriation for refunds tax sales certificates | 5.700.00 |
| Oklahoma County Separate School Fund | 3,400.00 |
| Oklahoma City Separate School Fund appropriation and levy. | 12,305.00 |
| Oklahoma City Separate School Fund appropriation and levy | 5,811.57 |

We have examined the items in the protest, and upon consideration of the motion we sustain the same as to the items named above, except the item for county commissioners for overseeing roads and bridges. That item is governed by section 6430, C. O. S. 1921 [O. S. 1931, sec. 7858], the applicable portion of which is as follows:

"In all counties in this state having a population of over 110,000, as shown by the next preceding federal census, the county commissioners shall each be paid an annual salary payable monthly, in the sum of fifteen hundred ($1,500.00) dollars. In addition to the salary provided for in this section, they shall each be entitled to ten (10c) cents per mile for each mile actually and necessarily traveled, in going to and returning from each board meeting of said county commissioners, also ten (10c) cents per mile for each mile actually and necessarily traveled in inspecting road and bridge work: provided, that no county shall be liable for more than fifty ($50.00) dollars per month to any commissioner. this to be in addition to all other compensation provided by law".

In the case of Caddo County v. Chicago. R. I. & P. Ry. Co., 155 Okla. 32, 7 P. (2d) 900. we held that that portion of the act. section 6430, C. O. S. 1921 [7858, O. S.

1931], relating to counties between 41,000 and 51,000 population was unconstitutional for the reason that it arbitrarily fixed the compensation of county commissioners in all counties of this state having a population of over 41,000 and not more than 50,C00 inhabitants, as shown by the last preceding federal census, at the same amount as in counties over 80,000 and not more than 110,000 inhabitants, as shown by the next preceding federal census, while in counties of more than 51,000 inhabitants and not over 80,000 inhabitants the salary of the county commissioners would remain under section 7856, O. S. 1931, at $800 and between 41,000 and 51,000 inhabitants the county commissioners would receive a salary of $1,500 per annum, payable monthly, and was clearly an arbitrary application of that bracket. Key v. Donnell, 107 Okla. 157, 231 P. 546. It does not necessarily follow that the remainder of the section is unconstitutional. It is manifest that the legislative purpose was threefold: (1) To fix the salaries and mileage of county commissioners in counties of over 41,000 and not more than 51,000 inhabitants, as shown by the next preceding federal census; and (2) in counties having a population of over 80,000 and not more than 110,000 inhabitants, as shown by the next preceding federal census; and (3) in all counties having a population of over 110,000 inhabitants as shown by the next preceding federal census. As to the two latter brackets it does not appear that the Legislature arbitrarily applied the statute in such manner as to render it unconstitutional.

In the case of Comanche Light & Power Co. v. Nix, Sheriff, 53 Okla. 220, 156 P. 293, we held in the third syllabus paragraph that:

"The question as to whether portions of a statute which are constitutional shall be upheld while other divisible portions are eliminated as unconstitutional is primarily one of intention. If the objectionable parts of a statute are severable from the rest in such a way that the Legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional. If, however, the constitutional and the unconstitutional portions are so dependent on each other as to warrant the belief that the Legislature intended them to take effect in their entirety, it follows that, if the whole cannot be carried into effect, it will be presumed that the Legislature would not have passed the residue independently, and accordingly the entire statute is invalid."

In that case Mr. Justice Sharp, delivering the opinion of the court, goes into the subject here under consideration in a very exhaustive manner, and no useful purpose may be served by repeating in this opinion what is there forcefully stated. The rule of law announced in that case is followed in Wood & Co. v. Russell et al., 102 Okla. 92, 226 P. 1940, and is further discussed in Sneed, Secretary of State, v. Tippett et al., 114 Okla. 173, 245 P. 40. In the case of Wood & Co. v. Russell, supra, we said:

"If the objectionable parts of a statute are severable from the rest in such a way that the Legislature would be presumed to have enacted the valid portion without the invalid, the failure of the latter will not necessarily render the entire statute invalid, but the statute may be enforced as to those portions of it which are constitutional."

We are of the opinion, and so hold, that the Legislature would be presumed to have enacted the bracket fixing the salaries and compensation of county commissioners in counties having a population of over 110,000 inhabitants, as shown by the last preceding federal census, without including in said section the invalid part relating to counties of more than 41,000 and not more than 51,000 inhabitants. To hold otherwise would do violence to the intelligence and good faith of the legislative branch of this government. It is our duty to sustain enactments of the Legislature unless the same are clearly unconstitutional. We have discussed this section for the reason that the briefs in this case and other protests show that some confusion has arisen relative to this bracket resulting from the decision of this court in the Caddo County Case, supra. From a careful consideration of the act, we are of the opinion that the bracket relative to the compensation of the county commissioners in counties having a population of over 110,000 inhabitants is valid, and, therefore, the levy for compensation for the county commissioners of Oklahoma county is valid, and that they may each receive in addition to the salary of $1,500 and mileage provided in that bracket of said section, not to exceed $600 per annum, payable $50 per month, for inspecting and supervising road and bridge work in Oklahoma county. The judgment of the Court of Tax Review in regard to this item is affirmed.

The next levy attacked is the one relating to certain deputy county officials coming under chapter 130, Session Laws 1929. We held in Crawford, County Treasurer, v. Smith, 162 Okla. 165, 19 P. (2d) 964, that said act was constitutional, and the levy

for such deputies was valid. What we had to say relative to that act in the Crawford Case applies with equal force in this case, and the levy is approved.

The next question presented is relative to the separate budget prepared by the board of education of the independent school district of Oklahoma City and by it submitted to the board of county commissioners of Oklahoma county for publication. The items of the budget involved are for site and building for high school, $300,000, additions and betterments, buildings, addition to Dunbar school, $50,000. The levy is a county, and not a school district levy. The issue presented is relative to the publication of the budget or estimate. The word "budget," in the proviso in section 7040, O. S. 1931, is used synonymously with the word "estimate" in the section requiring publication of the estimate. The board of county commissioners reduced the levy as made by the board of education from $300,-000 to $100,000 and published the item for additions and betterments $50,000, but did not mention the school or schools to which it applies. unless all of said item is for repairing and improving the Dunbar school building, and published the estimate for site and building for high school in the sum of $100,000, and certified the budget or levies for the separate school for colored pupils maintained in the independent school district of Oklahoma City to the county excise board. The county excise board made an appropriation for $300,000 for site and building for high school, and published the increase. Counsel for protestant does not commit himself upon the issue as to which board should publish the budget or estimate of needs for a separate school maintained in an independent school district. He has entered a plea of "not guilty" and presents all the defenses presentable under that plea. He attempts to raise a reasonable doubt as to the validity of the levy and defeat the tax for the colored high school. The plea did not prevail in the Court of Tax Review. and must not here. unless we conclude the decision of that court was clearly erroneous.

Our attention is called to the following decisions of this court: Board of Education of Guthrie v. Excise Board of Logan County, 86 Okla. 24, 206 P. 517; Hull et al. v. Board of Education of City of Bartlesville, 150 Okla. 30, 300 P. 775. In our opinion these decisions are not in point. There the question of the publication of the estimate was not involved. So, we must look to the statute in order to determine the validity or invalidity of the levy under the facts in this case.

The levy is governed by the proviso in section 7040, O. S. 1931. which is as follows:

"Provided, however, that in all independent districts where separate schools for white and colored children are maintained, it shall be the duty of the board of education therein, at the time of the preparing of their annual budget, to prepare a separate budget of the amount of money that will be required to be raised by taxation, for the support and maintenance of such separate schools, including the amount necessary to purchase sites and to erect school buildings for such separate schools for the coming fiscal year, and it shall thereupon be the duty of the county excise boards in such counties to levy a tax on all taxable property in their respective counties sufficient to pay the cost of supporting and maintaining such separate schools and purchasing sites and erecting school buildings for such separate schools as shown by such budget, and which said tax shall be published, levied, and collected in the same manner as other taxes for county purposes, and when collected shall be paid over to the respective treasurers of the board of education in such districts, to be expended upon the order of such board of education for the purpose for which same was levied and collected."

The query, then, is, In what manner are other taxes for county purposes published? This is answered by the language found in section 12674, O. S. 1931. relating to the preparation of the budget for county purposes by the board of county commissioners. Eliminating the portion relative to the budgets or estimates by other boards. and so far as it is necessary to the question under consideration. paraphrasing. it reads: Every board of county commissioners shall make in writing its financial statement showing the true fiscal condition of the county at the close of the previous year. and an itemized statement of estimated needs and probable income from sources other than ad valorem taxes for current expense for the current fiscal year. Each financial statement and estimate for the county, as prepared in accordance with the provisions of this section, shall be published in some newspaper published in said municipality in one issue. if published in a weekly newspaper. and in two consecutive issues, if published daily. and if there be no newspaper published in the county, then a copy of said statement and estimate shall be posted in at least five public places therein, which posting shall be made in each instance within five days after the meeting

of said municipal board. So, it appears clearly to us that, construing the two sections of our Code together, under the proviso in section 7040, supra, in all independent school districts where separate schools for white and colored children are maintained, it shall be the duty of the board of education therein, at the time of the preparing of their annual budget or estimate, to prepare a separate budget or estimate of the amount of money that will be required to be raised by taxation for the support and maintenance of such separate schools, including the amount necessary to purchase sites and to erect school buildings for such separate schools for the coming fiscal year, which said estimate shall be delivered by said board of education to the board of county commissioners of the county in which said separate school is located, and said estimate so made shall be published by the board of county commissioners of said county in the same manner as the financial statement and estimate for the county is published under section 12674, O. S. 1931, and such budget or estimate shall then be certified by the board of county commissioners to the county excise board, and it shall thereupon be the duty of the county excise board in such county to levy a tax on all taxable property in such county to pay the costs of support and maintaining such separate schools and purchasing sites and erecting school buildings for such separate schools as shown by such budget or estimate in the same manner as it makes appropriations for other county purposes. The only duty devolved upon the board of county commissioners is to publish the separate budget in the same manner as the financial statement and the estimate of needs for the county is published, and then transmit the same to the county excise board. It has no power or authority to change the budget or estimate for separate schools in an independent school district, and when it attempted to strike out of the estimate as made by the board of education and insert in such estimate an item prepared by it. such conduct on the part of the board of county commissioners amounted to an omission of official duty, that is, a forbearing or failure to include or do something enjoined upon it by law, and the estimate as made by the board of education of the independent school district of Oklahoma City for a separate high school site and building in said independent school district was in fact never published by the board of county commissioners, and under section 12679, O. S. 1931, the county excise board had the authority to publish the estimate and make the levy in the manner it did in the instant case, and under the circumstances we approve the levy as a valid levy for high school site and high school building for the separate schools in the independent school district of Oklahoma City.

Relative to the levy of $50,000 for additions and betterments, it is approved. If the improvements and betterments are not for the Dunbar school, then there is no valid levy for building that school building and the levy must be used for improvement and betterments of separate schools in the independent school district of Oklahoma City. The protestant does not state there is more than the one building to be repaired. The protestee states the item is to repair the Dunbar school. At least the appropriation is for additions and betterments, and it is immaterial whether it is for one separate school or more.

The next item to be considered is the levy for the Oklahoma City independent school district fund. Protestant complains of but one item where the protest was denied by the Court of Tax Review. It is the item for portable frame buildings for temporary relief for the following elementary schools: Shields Heights, Riverside, Washington, Stand Watie, Westwood, Horace Mann, Creston Hills, and Northwest of University Heights, in the sum of $30,000. Complaint is made that this levy is not properly itemized to conform to the following clause of section 9698, C. O. S. 1921 [O. S. 1931, sec. 12677], that: "For the purchase of building sites and other real estate with the appropriation for each thereof, separately stated; for construction of new buildings, with the appropriations for each proposed building, separately stated." The levy does not come under that clause of the section. As shown by the estimate as published, this sum was appropriated for portable frame buildings for temporary relief of the schools named in the estimate as made and published. There was an emergency existing in said districts brought about by a sudden influx of people therein caused by the discovery of an oil field adjacent to Oklahoma City. These buildings were so constructed that they could be moved from one school site to another to relieve emergencies. We think the board of education of Oklahoma City acted within its authority in caring for the urgent needs of the school children in these districts, and, therefore, hold the levy for that purpose to be valid.

The next issue presented by the protestant is relative to a levy for $150,000 for underpasses under the tracks of the A., T. & S. F. R. Company, between approximately Tenth street and Choctaw avenue in Oklahoma City. This item was included as a part of the general fund appropriation of the city, and the liability of the city therefore arises by virtue of an order of the Corporation Commission made in pursuance of the jurisdiction and power conferred upon it by chapter 53, Session Laws 1919, now sections 3658 to 3662, O. S. 1931. The order was made by the Corporation Commission requiring the construction of underpasses under the Santa Fe Railway at certain street intersections in Oklahoma City, and the Commission found the cost of such construction and apportioned same between the railroad company and the city as authorized by said act. The order further provides when the amounts assessed against the city shall be paid; that the appropriation was made for the purpose of paying the first installment due by the city in pursuance of said order, the railroad company being required to pay a portion of the expense of construction of the underpasses and the city being required to pay not exceeding 50 per cent. The constitutionality of the law has been definitely established by this court in the following cases: Missouri, K. & T. R. Co. v. State, 82 Okla. 221, 200 P. 208; Missouri, K. & T. R. Co. v. State, 107 Okla. 23, 229 P. 172; and Chicago, R. I. & P. R. Co. v. State et al., 131 Okla. 207, 268 P. 236. In Missouri, K. & T. R. Co. v. State, 107 Okla., supra, this court had before it for consideration the question of whether or not the Corporation Commission could make an order relative to the construction of the crossing before it had paid the railroad company for a portion of its right of way where the city appropriated a part thereof for street purposes. The 5th syllabus paragraph by the court in that case is as follows:

"Where a city has selected the point for the construction of a grade crossing over a railroad, and upon a petition the Corporation Commission has ordered the railroad company to construct such grade crossing, it cannot enforce obedience to such order until after the question of damage to the fee in its right of way has been determined either by amicable settlement or by proper condemnation proceedings.

"In such case it is immaterial whether the estimate of cost of construction of such crossing be made first or whether the estimate of damage to the right of way be made first, but it is necessary that the point of crossing should be made before either could be accurately made. Provided however, that the order of the Corporation Commission for the construction of such crossing cannot be enforced, in any event, until the damage to the right of way has been determined by amicable settlement or by proper condemnation proceedings."

In the body of the opinion the court uses this language:

"As we view the matter, it is immaterial whether the estimate of damage to the fee or the estimate of cost of constructing the crossing should be made first; in other words, it is immaterial so far as the law is concerned as to which estimate is made first, but it stands to reason that neither estimate could be made until the point for the crossing be first selected; after such point for the crossing is selected, the fact that the Corporation Commission made the estimate of the cost of construction of the crossing before the award was made as to the damage to the fee does not affect the jurisdiction of the Corporation Commission nor the validity of the estimate it made. The fact is that the proper authorities for the city selected the point of crossing, and the Corporation Commission upon the evidence submitted made an estimate of the cost of construction thereof and assessed the cost of same to the parties interested, viz., the city of McAlester and the railroad company. The statutes, however, prohibit the Corporation Commission from assessing more than 50 per cent. of the cost of construction to the city, and, as it assessed only 50 per cent. of such cost to the city, its order should be, and is sustained."

It is contended by protestant that the Corporation Commission did not have authority to make the order, and, further, that it cannot require the city of Oklahoma City to make a levy for purely municipal purposes. We think the Corporation Commission, under the law, had authority to determine the facts and make the order. The levy is not for purely municipal purposes, but has to do with the safety of the general public traveling upon the streets of Oklahoma City. The municipal counselor in oral argument of this cause before this court stated the city made the levy in good faith and wanted the same sustained. In the case of Crowell v. Benson, 76 L. Ed. 598, the Supreme Court of the United States, in an opinion by Mr. Chief Justice Hughes, at page 612, says:

"As to determinations of fact, the distinction is at once apparent between cases of private right and those which arise between the government and persons subject to its authority in connection with the performance of the constitutional functions of the

executive or legislative departments. The court referred to this distinction in Den ex dem. Murray v. Hoboken Land & Improv. Co., 18 How, 272, 15 L. Ed. 372, supra, pointing out that 'there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.' Thus the Congress, in exercising the powers confided to it, may establish 'legislative' courts (as distinguished from 'constitutional courts in which the judicial power conferred by the Constitution can be deposited') which are to form part of the government of territories or of the District of Columbia, or to serve as special tribunals 'to examine and determine various matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it.' But 'the mode of determining matters of this class is completely within congressional control. Congress may reserve to itself the power to decide, may delegate that power to executive officers, or may commit it to judicial tribunals.' Ex parte Bakelite Corp. 279 U. S. 438, 451, 73 L. Ed. 789, 794, 49 S. Ct. 411. Familiar illustrations of administrative agencies created for the determination of such matters are found in connection with the exercise of the congressional power as to interstate and foreign commerce, taxation, immigration, the public lands, public health. the facilities of the post office, pensions, and payments to veterans."

The reasoning in that case relative to fact finding commissions and boards applies to this case. A state may distribute its powers as it sees fit, provided only that it acts consistently with the essential demands of due process and does not transgress those restrictions of the federal Constitution which are applicable to state authority.

The people in adopting the Constitution of our state distributed certain of its powers in a department designated as the Corporation Commission, and granted it certain executive, legislative, and judicial authority.

The Legislature has power and authority to designate an administrative agency to hear evidence and determine the facts upon which the enforcement of the constitutional rights of the citizens may depend.

The Legislature may delegate to the Corporation Commission power and authority not inconsistent with its constitutional duties to make and enforce legislative and administrative orders where such powers and duties are not by the Constitution specifically

distributed to some other branch of the state government or reserved to the people of the state. The framers of our Constitution distributed some of the powers of state government to the executive, some to the legislative, and some to the judicial department of the government, and created the Corporation Commission and distributed to it certain powers. So, under our Constitution, it is clear that the Legislature had the power to delegate to the Corporation Commission the power and authority to determine the facts relative to the expenses of constructing the underpasses involved and to apportion the costs between the railroad company and the city of Oklahoma City. Not more than 50 per cent. of such costs was or could be ordered paid by the city. The order was made after a full hearing. and was not appealed from to this court as authorized by law, and is prima facie correct. and in our opinion should be, and is hereby sustained, and the tax levy for the underpass is held valid.

Further considering city levies the next item of protest is relative to the appropriation to pay for city elections. Since this was argued and submitted that item has been adjusted between the attorney for protestants and protestees. We have examined the stipulation of settlement in regard to same. and feel that it is just, fair, and reasonable and in accordance with law, and we approve the settlement as to that item.

The next item is contingent expenses in the sum of $10,000. We have examined the record in regard to this item, and it appears to us that the same is just, fair, and reasonable. In the Matter of the Protest of St. L. & S. F. R. Co., 153 Okla. 283, 5 P. (2d) 763, we said:

"Counties, cities, and towns must of necessity have from time to time certain expenses which cannot be foreseen. To refuse to allow appropriations in reasonable amounts for such purposes would greatly hinder orderly government. That such appropriation cannot be itemized so as to show the particular expenses intended to be provided for is obvious, for, where expenses cannot be foreseen, it is impossible to itemize them. The object in requiring appropriations to be itemized and statements of proposed appropriations to be published is that the taxpayers may know as far as possible for what purposes their money is to be expended. As a rule. all the principal necessary expenditures of a municipality may be foreseen and the items thereof set forth. but of necessity certain emergencies arise whereby it becomes necessary to expend mon-

ey, the particular necessity whereof could not be foreseen. Levies for such purposes where reasonable should be upheld, and have been under statutes which require all appropriations to be itemized. (Citing authorities.)"

Taking into consideration the population of Oklahoma City, and the several departments of city government, and the fact that this matter was considered by the county excise board after the estimate had been published and every taxpayer given an opportunity to be heard, and the excise board having exercised its discretion in regard to this matter, we do not feel that we would be justified in setting aside the levy. The same is, therefore, approved as valid.

The next levy presented by the protest is the sinking fund of Oklahoma City in the sum of $11,374.90. There is nothing in the record to show that this is not a correct and proper levy, and it is sustained as valid.

There is much discussion in the brief of protestant relative to itemization of certain levies, and our attention is called to several former decisions of this court relative to holdings upon that proposition. Some of the cases relate to the itemization of appropriations for bridges. It will be noted that the statute requiring itemization of appropriations consists of a number of clauses; for illustration, we find in section 12677, O. S. 1931, the clause, "for construction of new bridges, so itemized as to show the location of each proposed bridge and the amount appropriated therefor separately stated," then, "for maintenance and repair on bridges." The first item under the statute is required to be so itemized as to show the location of each proposed bridge and the amount appropriated therefor separately stated, but for maintenance and repairs of the bridges the statute does not require the same to be so itemized. Again, under subsection (d) we find the clause, "for furniture and fixtures," does not require the several items to be separately itemized, while in the next clause, "for the purchase of building sites and other real estate with the appropriation for each thereof, separately stated," requires a separate itemization of each item in that clause. This question is also raised in regard to the separate budget for separate schools in the independent school districts. Section 7040, requiring the board of education in an independent school district to prepare a separate budget of the

amount of money that would be required to be raised by taxation for the support and maintenance of such separate schools, including the amount necessary to purchase sites and erect school buildings for such separate schools for the coming fiscal year, does not require the separate itemization for buildings and sites as required in the estimate for the independent school districts. Section 12677, supra, does not require the appropriation to be itemized so as to show said amounts separately. The board of education of the independent school district is designated by the Legislature as the board to make the estimate, it being evident that the board of education in the independent school districts is in closer touch with educational institutions therein and thereby in a better position to prepare the budget and estimate than is the board of county commissioners, that board being required to make the estimate for other county purposes. We have repeatedly held that where the statute requires a special itemization, the statute must be followed, but where that is not the requirement of the statute, we would not invalidate a levy for the reason only that it was not separately itemized. We think it would be the better practice in all instances for the estimate to be itemized at least in a general way to show approximately the purposes for which the tax levy was requested.

The next item of protest for consideration involves the department of shops and garage, which the protestant contends is an unauthorized levy. The shop and garage department was established for the purpose of consolidating the maintenance and equipment of all motor vehicles of all departments of the city except the fire department for the sake of economy. The vehicles of the fire department are under their own special supervision and care, where repairs are made and the equipment kept in proper condition and maintained, but all of the other motor equipment of the city is kept in a municipal garage, for which this appropriation was made. This large city garage houses the trucks of the health, garbage, park, and other departments of the city. We do not think it would be seriously contended that the city is not authorized to make necessary levies to repair this equipment in each separate department. No good reason is offered, and we see none, why the city, for the sake of economy, cannot maintain one department where all of these repairs are made. The itemization is as follows:

Salary of one superintendent_____amount stated
" " " secretary _____ " "
" " two foremen _____ " "
" " nine mechanics __amount of each stated
" " three mechanics __ " " "
" " battery maintenance _____amount stated
" " three service men__amount of each stated
" " one watchman _____amount stated

We hold that this is a substantial compliance with the statute, and that the levy is valid and the protest should be, and the same is, denied.

We will now consider protests relative to certain appropriations made for the board of education of Oklahoma City. The first item protested is the sum of $15,000 for two school sites. The Court of Tax Review sustained the protest for the reason that the same was not properly itemized. This estimate comes under the clause in subdivision (d) of section 12677, O. S. 1931, which reads:

"For the purchase of building sites and other real estate with the appropriation for each thereof, separately stated."

This clause requires a separate item of appropriation for each building site. Counsel for protestee contends that it would work a hardship on the board of education to comply with this statutory requirement. We cannot agree with this contention. It would not have been any more difficult to have stated in the estimate $6,000 for one building site and $9,000 for the other, or $7,000 for one and $8,000 for the other, and complied with the statute, that it was to lump the two building sites together under one item of $15,000. We affirm the decision of the Court of Tax Review in sustaining the protest to this item.

The next protested item is the levy for the board of education of Oklahoma City for repairs and renewals—buildings—$51,738. The record shows that there are a number of school buildings in Oklahoma City, and that it is impossible to state the repairs that will be necessary to be made upon each building during the fiscal year. The statute does not require the estimate or appropriation for repairs in maintenance of buildings to be separately itemized. The record shows that much proof is taken in regard to this item, and the same is just, fair, and reasonable. The judgment of the Court of Tax Review in sustaining the protest to the same is reversed, and the levy is sustained and declared valid.

The remaining items involved what the protestant contends to be the failure of the school district to account for surplus on hand at the end of the fiscal year. We have carefully checked the record, and conclude that in theory, according to the figures of an accountant, there was a surplus balance on hand at the end of the fiscal year because funds had been illegally transferred from one fund to another, and theoretically they are still in the fund from which they were transferred, but as a matter of fact the surplus had been expended in paying school district warrants and there was no surplus balance on hand at the end of the fiscal year. The board of education was not authorized to use the funds accumulated in previous years except in the manner and for the purposes provided by law. The board of education used the surplus balance and paid valid warrants that where within valid estimates, but owing to the fact that protests had been sustained to certain tax levies for prior years the revenues for prior years had been reduced in the sum of about $80,000. In other years a surplus had been accumulated and the warrants were paid out of the accumulated surplus. This court in the case of Protest of Bledsoe et al., 161 Okla. 227, 17 P. (2d) 979, said that:

"While this court has said that an illegal transfer of funds must be disregarded and the amount thereof considered as cash on hand in the fund from which it was transferred, we did not intend to hold that any amount should be considered as cash in a fund when that amount of cash was not on hand in that or any other fund. We held to the contrary in Bristow Battery Co. v. Payne, 123 Okla. 137, 252 P. 423, and Gulf, C. & S. F. Ry. Co. v. Excise Board, 141 Okla. 34, 283 P. 1003. Lest there be further misapprehension in regard to this question, we desire to state that if an amount is illegally transferred from one fund to another, the amount of cash on hand in the second fund, not exceeding the amount illegally transferred, may be considered by the excise board as in the fund from which the illegal transfer was made, for the purpose of restoring to the first fund the amount that belongs in it; but where an illegal transfer of funds has been made and there is no cash on hand in the fund to which the illegal transfer was made, neither the excise board nor any court may direct that there be considered as cash on hand in the first fund any part of the amount illegally transferred therefrom. A financial statement must show the true and correct financial condition."

Such an illegal transfer of funds must be disregarded, and when funds are so illegally transferred the money on hand in the fund to which it was transferred to the extent that the latter fund is augmented is in the nature of a trust fund. It does not

belong to the fund to which it was illegally transferred, and when there is money in that fund in excess of the sum appropriated for and necessary to pay the legal claims against said fund for the current fiscal year, and if the fund to which the money was so illegally transferred is the sinking fund, and there is money in said sinking fund in excess of the sums appropriated for and necessary to pay the current fiscal year claims, such as in the payment of judgments as provided by law and interest coupons as they mature and the bonded indebtedness as it matures, such money will be considered as cash on hand in the fund from which it was transferred; but where an illegal transfer of funds has been made and all the money in excess of the funds appropriated for and necessary to pay the items above mentioned has been paid out and expended, then neither the county excise board nor any court may direct that there be considered as cash on hand in the first fund any part of the money illegally transferred therefrom.

For the reasons stated, the decision of the Court of Tax Review in regard to these items is reversed and the levy approved.

The judgment of the Court of Tax Review is affirmed in part and reversed in part, and this cause is remanded to the Court of Tax Review, with directions to proceed consistently with the views herein expressed.

#### Order.

Either party desiring to file a petition for rehearing in this cause is hereby ordered and directed to file same within ten (10) days after the date on which this opinion is filed.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur.